715 P.2d 939

**STATE of Idaho, Plaintiff-Respondent,**

**v.**

**Lynn Calloway SNAPP, Defendant-Appellant.**

**No. 15501.**

Supreme Court of Idaho.

Jan. 8, 1986.

Rehearing Denied March 17, 1986.

Alan E. Trimming, Boise, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-respondent.

SHEPARD, Justice.

This is an appeal from convictions and sentences on three counts of sexual abuse of children under the age of 16. The issues raised on appeal are narrow, *i.e.*, whether the trial court erred in denying defendant's motion to strike certain testimony of an expert witness, defendant's motion for a mistrial based on that same testimony, and whether the sentences imposed were excessive and therefore constitute an abuse of discretion of the sentencing court. We affirm both the convictions and sentences.

Defendant-appellant Snapp was charged with sexual abuse of his 14-year-old daughter (A) and his two 11-year-old sons (B)(C). Each child testified at trial as to various instances where he or she had been sexually abused by the father, and also testified as to instances where he or she had seen the father sexually abuse others of the children.

(A) testified that her father, in the nude, would approach her from behind, rub or push against her, hold her by her stomach, or in the breast area, and when he finished she would feel something wet between her legs. (A) testified that this contact occurred many times. (A) testified that during these instances her father would laugh at her, curse her, and make her rub lotion on his nude body. She stated that when she took a bath her father would enter the bathroom, sit on the toilet, and stare at her through a hole that he had burned in the shower curtain. She testified to instances where her father masturbated in her presence.

(B) testified that he saw his father rub against (A), and that he was present when his father forced (A) to rub lotion on his nude body. (B) also testified that his father made him rub his father's chest, legs, and between his legs. He testified that his father, while nude, would push up against him and that he could "feel his father's peter." (B) testified that on one occasion when (B) was taking a shower, his father "grabbed me in my privates," resulting in injury to (B's) genitals.

(C) testified that he saw his father, in the nude, touch (A) in the breast area and rub against her. He testified that he heard his father laugh at (A) and call her names after he finished rubbing against her. (C) testified that he saw his father burn a hole in the shower curtain with a cigarette, and further that he saw his father peek through the hole at his sister and brother, as well as at himself while bathing. (C) also testified that on one occasion his father, while nude, took off (C's) clothes and forced himself on top of (C), rubbing on him. On yet another occasion the father took off all of (C's) clothes, threw him on the bed, and got on top of him. (C) went on to say that on another occasion his father held him down, and using vaseline, "tried to put his penis up my butt." (C) testified that his father made both him and his sister rub his father's penis.

At the conclusion of the testimony of the three children, counsel for Snapp requested an oral offer of proof as to the purpose of the next witness, Dr. Michael Eisenbeiss, a clinical psychologist. In response, the State indicated that Dr. Eisenbeiss had interviewed the three children and conducted a number of psychological tests shortly after the incidents in question; that his testing of (A) and (C) indicated they had both been sexually abused; that his testing of (B) did not indicate sexual abuse but that it was not uncommon for such testing to result in a false negative. Snapp's counsel objected, contending that the admission of Dr. Eisenbeiss' testimony would constitute his opinion that the childrens' testimony was truthful. The court ruled at that point that Dr. Eisenbeiss could testify as an expert in regards to his examination relative to whether or not there had been sexual abuse of the children.

Dr. Eisenbeiss then testified without objection as to the psychological testing he had performed on the three children. As to (A), Eisenbeiss testified that during her testing she was evasive in that she was not telling everything that had happened. Defense counsel objected to the answer as being conclusory, but the objection was overruled. Eisenbeiss testified that "a lot of times children become very honest when they come into a courtroom and they reveal," at which point defense counsel objected, which objection was sustained. Counsel then moved to strike that particular testimony, and also moved for a mistrial. Both motions were denied, and defense counsel then proceeded to cross-examine Dr. Eisenbeiss.

The testimony of Dr. Eisenbeiss cannot be considered in a vacuum. It must be viewed in the light of the testimony of (A). (A) was extensively cross-examined as to some of her testimony at trial being more extensive than her testimony at the preliminary hearing.

Appellant suggests that the testimony of Eisenbeiss was an attempt to rehabilitate the credibility of (A) by suggesting that her testimony was credible. We

do not agree. It is our view that the Eisenbeiss testimony was a generality expressed by an expert witness in child psychology that "a lot of times" children become honest in the court room. No reference was made to any of the specific children who had testified. At times expert testimony will tend to show that another witness either is or is not telling the truth and this in and of itself will not render evidence inadmissible. *State v. Myers,* 359 N.W.2d 604 (Minn.1984); *State v. Middleton,* 294 Or. 427, 657 P.2d 1215 (1983). That portion of the testimony of Dr. Eisenbeiss was admissible and relevant, and the court's refusal to strike that testimony was not error.

The balance of the statement of Eisenbeiss was cut short by the objection which was sustained by the court. The phrase "and they reveal," in and of itself conveyed no meaning, and hence the refusal to strike that portion was not error.

It is clear that the trial court understood that the prosecution was attempting to elicit through Dr. Eisenbeiss, testimony relating to the "child sexual abuse syndrome." The court ordered the prosecution to abandon that line of questioning, and the prosecution complied. We are, nevertheless, urged by the State to treat an area of the law not previously addressed by this Court, and follow the lead of other jurisdictions by holding that in appropriate cases testimony as to the "child sexual abuse syndrome" is proper. The State urges that the "child sexual abuse syndrome" is generally recognized and utilized in the scientific community and evidence thereof has been held to be admissible. *See State v. Kim,* 64 Haw. 598, 645 P.2d 1330 (1982); *State v. Myers,* 359 N.W.2d 604 (Minn.1984); *State v. Middleton,* 294 Or. 427, 657 P.2d 1215 (1983); *State v. Petrich,* 101 Wash.2d 566, 683 P.2d 173 (1984).

Psychologists and psychiatrists have observed that children who have been sexually abused demonstrate specific actions and emotions, and that set of actions and emotions is denominated as the "child sexual abuse syndrome." Psychologists and psychiatrists assert the ability to identify cer-

tain characteristics of victims who have been sexually abused on a regular basis. They also assert that an offender generally exhibits one or more of the following characteristics: isolation from persons outside the family; poor interpersonal relationships; poor impulse control; commitment of acts alone; and an otherwise law-abiding citizen. They theorize that sexual abuse usually occurs progressively, generally takes place over a long period of time, and that disclosure to authorities does not usually come from the victim. A typical case will usually involve a passive mother who denies that abuse is occurring, and who supports the perpetrator. Common emotional reactions in victims are fear of safety, fear of future sexual abuse, feelings of depression or anxiety, embarrassment at peers' knowledge of happenings, a negative view of sex, and doubts that one parent is strong enough to protect the victim from further sexual abuse. Other factors identifiable in the "child sexual abuse syndrome" are inconsistent statements or retraction of the accusation by the victim because of family pressure or treatment in the legal system. *See* Wells, *Expert Testimony—To Admit or Not to Admit*, Florida Bar Journal (Dec.1983).

In *State v. Myers*, 359 N.W.2d 604 (Minn. 1984), expert testimony was held admissible as to the emotional and psychological characteristics observed in sexually abused children. There, an expert was permitted to testify that based on those characteristics observed in the victim, the victim was telling the truth. That testimony was held to be properly admitted.

In *State v. Kim*, 64 Haw. 598, 645 P.2d 1330 (1982), the court upheld as admissible the testimony of a child psychiatrist who had examined the 13-year-old victim in a family rape case. The psychiatrist testified as to specific characteristics observed among children who had been sexually abused by family members, and that since many of those same characteristics were observed in the victim, that her story was believable.

*State v. Middleton*, 294 Or. 427, 657 P.2d 1215 (1983), involved a father's prosecution for rape of his 14-year-old daughter. Testimony was permitted from an expert who compared the behavior of the victim with that of other sexually abused children to explain the victim's behavior in running away from home after the rape, and in retracting her accusation. There, however, the court held that the expert could not give a direct opinion as to a belief that the victim was telling the truth.

*State v. Petrich*, 101 Wash.2d 566, 683 P.2d 173 (1984), involved an eight month delay in the victim reporting that her grandfather had sexually abused her. In question there was the testimony of an expert that a delay in reporting was found in over fifty percent of child sexual abuse cases, and that a longer delay is ordinarily associated with cases where the abuser was someone known to the child. The court held that testimony was proper. However, the court also held that admitting the statement, in "eighty-five to ninety percent of our cases the child is molested by someone they already know," was erroneous since it tended to identify the defendant as a member of a group having a higher incidence of child abuse.

The State urges that the above type of cases in the area of sexual abuse of children, and the expert testimony allowed therein, is the wave of the future, and urges this Court to join those jurisdictions and permit such type of testimony in child abuse cases in Idaho. It is asserted that such testimony is at bottom no different than many other types of expert testimony which in some ways go to enhance or destroy the credibility of witnesses. It is also asserted that there is massive public concern about sexual abuse of children. In many cases, it is claimed, because of the very young age of a victim and the testimonial difficulties encountered with such a young child, the prosecution cannot make out a case except by utilizing expert testimony as to the "child sexual abuse syndrome" and an examination demonstrating that the victim suffers from those same emotional characteristics.

On the other hand, it is asserted that in no other area, with the possible exception of the battered wife syndrome, is such testimony permitted in a criminal prosecution, and that such testimony inherently prejudices the rights of a defendant since there is no way in which a defendant can confront an accuser. Hence, in this sense the end result to a defendant is different than in any other type of battle of the experts.

We need not, however, resolve these questions today. Here the defendant was convicted upon the testimony of his children without any expert testimony being necessary to that conviction. The defendant was clearly able to confront his accusers. Hence, we do not today pass upon the admissibility of expert testimony wherein the guilt of a defendant is sought to be established by testimony which describes the "child sexual abuse syndrome," finds typical characteristics of such syndrome in an alleged victim, and thus suggests that the victim indeed has been sexually abused.

As noted herein, we find no abuse of discretion in the trial court's refusal to strike any of the testimony of Dr. Eisenbeiss which preceded the objection of defense counsel, nor any abuse of discretion in the refusal to grant a mistrial.

Snapp next asserts the trial court abused its discretion in imposing sentence, *i.e.,* on Count II, a five-year indeterminate sentence; on Count III, a five-year indeterminate sentence to run consecutive to the five years imposed in Count II; and on Count I, a withheld judgment and five years probation consecutive to the sentence on Count III. The trial court retained jurisdiction for 120 days during which time Snapp was evaluated. Thereafter the jurisdictional review committee of the North Idaho Correctional Institute recommended that probation not be considered as an alternative. In response to the committee evaluation the trial court relinquished jurisdiction and Snapp was remanded to the custody of the State Board of Corrections and incarcerated in the penitentiary.

Snapp argues that his offenses should be viewed as less serious than those involving actual sexual intercourse. He alleges that the sentence is overly harsh because he voluntarily relinquished all parental rights, and therefore, is no longer a threat to his children.

The settled rule in this state is that sentencing is within the discretion of the trial court, and defendant has the burden of showing a clear abuse of that discretion on appeal. *State v. Stroup,* 101 Idaho 54, 607 P.2d 1328 (1980); *State v. Mooneyham,* 96 Idaho 145, 525 P.2d 340 (1974). The record in this case indicates that Snapp has damaged his family, perhaps beyond repair. The trial court considered the likelihood of rehabilitation, the seriousness of the crime, and Snapp's prior criminal record. The trial court considered the committee evaluation of Snapp to the effect that Snapp had consistently refused to admit the gravity of his offenses or even acknowledge that he had sexually abused his three children.

The maximum sentence for a violation of I.C. § 18–1506 is a fixed five-year term. I.C. § 18–112. Therefore the trial court possessed statutory authority to sentence Snapp to three consecutive fixed five-year terms. The sentence actually imposed was a ten-year indeterminate sentence under which Snapp may be eligible for release after serving one-third of that term. Hence the sentence imposed was within the statutory maximum and will not be disturbed on appeal absent a clear abuse of discretion. We find no abuse of discretion.

The convictions and the sentences imposed are affirmed.

DONALDSON, C.J., and BAKES, BISTLINE and HUNTLEY, JJ., concur.