OPINION OF THE COURT
Simons, J.
In these two child protective proceedings parents have been charged with sexually abusing their children. The proof of abuse rests principally on out-of-court statements of each child, evidence which is not legally sufficient to make a fact finding of child abuse unless corroborated in accordance with the requirements of section 1046 (a) (vi) of the Family Court Act.[1] The common issue presented is whether the corroborative evidence in each proceeding is sufficient under the statute.
In Matter of Nicole V, Bronx County Family Court made a fact finding that Nicole V.’s father, respondent Lawrence V., had sexually abused his daughter, then 3 Vi years old, and prohibited him from visiting her without supervision for 18 months. On his appeal, respondent challenges the sufficiency of the evidence to support the finding of abuse, claiming the court erroneously received testimony from Nicole’s therapist to "validate” and corroborate Nicole’s out-of-court statements. In the second proceeding, Matter of Francis W. Jr., Samuel W. and David C., Onondaga County Family Court made a fact finding that a mother, respondent Mary Alice C., had sexually *117 abused her three sons, then ages 11, 6 and 4 and removed the boys from her home for 18 months. Respondent challenges the sufficiency of the evidence to support the finding of abuse, claiming the court erroneously used the boys’ out-of-court statements to corroborate each other. The orders were affirmed by the Appellate Divisions and we granted both respondents leave to appeal so that we could consider the types of evidence which may be used to corroborate a victim’s hearsay statements in a child protective proceeding.
I
In recent years preventing the sexual abuse of children in family settings has become a major social and judicial concern (see generally, Besharov, Introductory Practice Commentary, McKinney’s Cons Laws of NY, Book 29A,. Family Ct Act art 10, at 214-216). Such abuse is difficult to detect because the acts are predominantly nonviolent and usually occur in secret rendering the child the only witness. Moreover, once abuse is uncovered it is difficult to fix blame, not only because of the lack of evidence but also because of the reluctance or inability of victims to testify.
In an effort to alleviate these problems, the Legislature, in 1969, enacted the Child Protective Procedures Act (Family Ct Act art 10). Its purpose is to protect children from injury or mistreatment while ensuring that the State’s intervention on behalf of the child, against the wishes of a parent, comports with the parent’s due process rights (Family Ct Act § 1011). Child protective proceedings do not, of themselves, permanently sever parental rights or result in criminal sanctions. They are civil in nature and a finding of abuse or neglect need only be supported by a preponderance of the evidence (Family Ct Act § 1046; Matter of Tammie Z., 66 NY2d 1, 3). Upon making such a finding Family Court may interfere with a parent’s right to continue care and custody of a child for an initial 18-month period, subject to renewal, by putting into effect a wide variety of remedies which include various levels of supervision or removal of the child from the parent’s home (see, Family Ct Act §§ 1052, 1055 [b] [i]; Matter of Tammie Z., 66 NY2d 1, 4, supra).
Because the accused parent is not subject to criminal sanctions in a child protective proceeding, the Legislature has provided that the usual rules of criminal evidence do not apply. Unsworn out-of-court statements of the victim may be *118 received and, if properly corroborated, will support a finding of abuse or neglect (Family Ct Act § 1046 [a] [vi]). Corroboration is not required because statements of children are generally unreliable but because the out-of-court statements are hearsay and the statute requires some further evidence to establish their reliability (cf., Matter of Lydia K., 112 AD2d 306, affd 67 NY2d 681 [corroboration of child’s out-of-court statement not required if statement admissible under an exception to the hearsay rule]).
Notwithstanding these provisions, and even though the Family Court Act stated that corroboration as defined in the Penal Law was not required (see, Family Ct Act § 1012 [e] [iii]), many courts construed former section 1046 as requiring the same type of corroboration mandated by old provisions of the Penal Law requiring independent proof of the occurrence and identity of the offender in sex offenses when lack of consent was due to the victim’s age (see, Penal Law former § 130.15, repealed L 1974, ch 14, § 1). That standard made it extremely difficult to prove sexual abuse charges and thus, section 1046 (a) (vi) was amended in 1985, not to change the standard of proof or the requirement of corroboration, but to make clear that the corroboration requirements of the criminal law are not applicable to article 10 civil proceedings (see, Sponsor Goodhue’s Mem in support of legislation, L 1985, ch 724, 1985 NY Legis Ann, at 259; see also, Family Ct Act § 1012 [e] [iii]).
As amended, section 1046 (a) (vi) states a broad flexible rule providing that out-of-court statements may be corroborated by "[a]ny other evidence tending to support” their reliability (L 1985, ch 724). The amendment also provides that corroboration may include, but is not limited to, the types of evidence defined in other paragraphs of section 1046 (a). Thus, corroboration may come in the form of proof that the parent abused one of his other children (subd [a] [i]); proof that the injuries were of such nature that they would not ordinarily be sustained but for the acts or omissions of the parent (subd [a] [ii]); proof that the parent abuses drugs or alcohol to the extent that it would produce in him a state of stupor, unconsciousness, intoxication, hallucination, disorientation, incompetence or irrationality (subd [a] [iii]); hospital or agency reports suggesting the parent committed the act or omission (subd [a] [iv], [v]); and evidence regarding the emotional health of the parent (subd [a] [viii]). The statute provides that the evidence listed in these subdivisions may be sufficient, standing alone, to support a fact finding of abuse or neglect, but in those cases *119 in which it is not, evidence of the types listed may provide corroboration for a child’s out-of-court statements. The types of evidence listed in the section are only illustrative; additional kinds may also be deemed adequate on a case-by-case basis. Thus, courts have found sufficient corroboration in admissions by the parent, even though subsequently recanted (Matter of Margaret W., 83 AD2d 557, Iv denied 54 NY2d 609), evidence that the child was afflicted with a sexually transmitted disease (Matter of Tara H., 129 Misc 2d 508; see also, Matter of Jennifer Maria G., 112 AD2d 755, appeal dismissed 66 NY2d 1035) or evidence that the child had become pregnant (Matter of Joli M., 131 Misc 2d 1088). Of course, Family Court Judges presented with the issue have considerable discretion to decide whether the child’s out-of-court statements describing incidents of abuse or neglect have, in fact, been reliably corroborated and whether the record as a whole supports a finding of abuse.
II
 Applying these concepts to the evidence presented in the two proceedings before us, we conclude the statutory requirements of corroboration are satisfied in both and the orders should, therefore, be affirmed.
A
In Matter of Nicole V., petitioner presented three witnesses at the fact-finding hearing: the child’s mother, Linda V.; the child’s caseworker from Special Services for Children, Ms. Champ; and the child’s therapist, Ms. Lemp. Each witness testified to out-of-court hearsay statements made by Nicole describing incidents of sexual abuse by respondent in which he played "secret games” with her, involving hand to vagina contact, hand to chest contact, hand to anus contact, penis to vagina contact, and incidents in which he put "white paste” from his genital area in Nicole’s mouth and "all over her”.
There was also other evidence. Ms. Lemp testified that Nicole’s behavior was symptomatic of a sexually abused child. Nicole’s mother testified that Nicole developed vaginal rashes after weekend visits with respondent; that Nicole’s behavior changed after weekend visits with respondent; and that, on one occasion after Nicole returned from a visit with respondent, the mother noticed blood on the washcloth after washing *120 Nicole’s vaginal area. Finally, petitioner submitted a certified medical report stating that Nicole’s hymen had been ruptured.
Respondent testified on his own behalf and denied the allegations of abuse. He contends on appeal that Nicole’s out-of-court statements describing incidents of sexual abuse were not sufficiently corroborated.[2] Specifically, he contends that the opinion testimony of Nicole’s therapist was not corroborative evidence within the meaning of the statute.
Under familiar rules, expert opinions are admissible on subjects involving professional or scientific knowledge or skill not within the range of ordinary training or intelligence (People v Cronin, 60 NY2d 430, 432-433; De Long v County of Erie, 60 NY2d 296, 307; Dougherty v Milliken, 163 NY 527, 533). The psychological and behavioral characteristics and reactions typically shared by victims of abuse in a familial setting are not generally known by the average person and the courts have become increasingly more receptive to admitting expert testimony on the subject (see, e.g., People v Keindl, 68 NY2d 410, 422, rearg denied 69 NY2d 823 [psychological reactions of children sexually abused by a stepparent]; People v Henson, 33 NY2d 63, 73-74 [battered child syndrome]; see also, People v Ciervo, 123 AD2d 393 [battered wife syndrome]; People v Reid, 123 Misc 2d 1084, 1085-1088 [rape trauma syndrome]; see generally, McCord, Syndromes, Profiles and Other Mental Exotica: A New Approach to the Admissibility of Nontraditional Psychological Evidence in Criminal Cases, 66 Ore L Rev 19 [1987]). In People v Henson (supra), we upheld the use of expert testimony on "battered child syndrome” noting that extensive research had been undertaken in the area of physically abused children revealing that they shared common behavioral characteristics; "battered child syndrome” had become an accepted medical diagnosis (id., at 73-74). Evidence that a child demonstrated such characteristics, coupled with the fact that the child’s injuries occurred while in the custody of the parents, was held sufficient to permit the inference that the parents were responsible for the injuries (supra, at 74).
The sexually abused child syndrome is similar to the battered child syndrome. It is a recognized diagnosis based *121 upon comparisons between the characteristics of individuals and relationships in incestuous families, as described by mental health experts, and the characteristics of the individuals and relationships of the family in question (see, Sgroi, Handbook of Clinical Intervention in Child Sexual Abuse, at 39-79 [1982]; Sloan, Protection of Abused Victims: State Laws and Decisions, Children, at 110-113 [Oceana Publication]). Expert diagnoses on the subject have thus been accepted by some of our courts to validate out-of-court statements, particularly when an independent expert is employed for the purpose (see, e.g., Matter of Linda K., 132 AD2d 149; Matter of Ryan D., 125 AD2d 160; Matter of Fawn S., 123 AD2d 871; Matter of Kimberly K., 123 AD2d 865; Matter of Michael G., 129 Misc 2d 186). Indeed, such evidence has been accepted by us (see, People v Keindl, supra) and by courts of other jurisdictions, even in criminal cases, either to bolster credibility of infant victims (see, e.g., State v Kim, 64 Haw 598, 645 P2d 1330; State v Middleton, 294 Ore 427, 657 P2d 1215) or to corroborate the victim’s testimony (see, e.g., State v Sandberg, 392 NW2d 298 [Minn]; see also, Doe v New York City Dept. of Social Servs., 709 F2d 782, 791, cert denied sub nom. Catholic Home Bur. v Doe, 464 US 864). We conclude expert testimony was properly used to satisfy the corroboration requirements of section 1046 (a) (vi) in this case.
The validation evidence came from Nicole’s therapist, Ms. Lemp. She testified Nicole’s behavior led her to conclude Nicole had been sexually abused. Her opinion was formed during at least 10 therapy sessions spanning four months and was based on the nature of Nicole’s statements, their consistency over a period of time and her observation of Nicole’s behavioral patterns. Ms. Lemp explained that among the symptoms manifested by children who are sexually abused in an intrafamilial setting are: age-inappropriate knowledge of sexual behavior, manifested verbally, in play activities or through drawings; enuresis in a toilet trained child; regressive behavior and withdrawal; and severe temper tantrums or depression inappropriate for children of like age. She identified classic symptoms of child abuse in Nicole: her uncommunicative, withdrawn demeanor, a typical avoidance mechanism adopted by persons suffering from posttraumatic stress, and her knowledge of sexual activity far beyond the norm for 3 Vi-year-old children. There was no other basis in reality, for example, for Nicole’s statements of "white glue” or "paste” coming from her father’s genital area or the placing of his *122 penis in her vagina. Those statements by Nicole demonstrated specific knowledge of sexual activity.
Ms. Lemp was also able to observe Nicole’s display of extreme anger — far exceeding the temper tantrums normally seen in young children — and her fearful behavior exhibited through nightmares and sleep disturbances; she testified that such reactions were symptomatic of an abused child. She found it significant that Nicole repeated her claims to various people over a period of time in a consistent manner because, she stated, children "do not have the skill at lying that adults do” and thus "cannot be consistent [about lying] for a period of several months to several different people”.
Respondent contends that validation evidence, even if admissible to corroborate a child’s hearsay statement, must be received from independent experts in psychiatry or psychology and Ms. Lemp’s testimony did not qualify for the purpose because she was a social worker hired by Nicole’s mother to treat her.
Ms. Lemp’s qualifications to testify were conceded by respondent, however, after it was established that she had a Bachelor’s degree in deviant behavior and social control and a Master’s degree in social work, that she was the director of two Bronx County offices of the Victim Services Agency and had counseled sexually abused children and their families for 2Vz years and that she was the chairperson of the education committee of the New York City Task Force Against Sexual Abuse.
Nor was her testimony unavailable for corroboration because she was treating Nicole. An expert’s relationship to the party offering her does not disqualify the witness from giving opinion evidence and any bias Ms. Lemp may have had could be addressed on cross-examination. Moreover, Nicole’s statement was also corroborated by evidence that she suffered from vaginal rashes, depression and sleep disturbances, that blood was found in her vaginal area and by a certified medical report stating that she had no hymen (see, Family Ct Act § 1046 [a] [vi]; CPLR 4518). There may be circumstances when the court, in its discretion, finds it desirable to use the assistance of an independent expert but in this case not only was the testimony of Ms. Lemp sufficient to corroborate Nicole’s out-of-court statements and establish a prima facie case, there was also additional corroboration which supported Family Court’s fact finding. Accordingly, the order of the Appellate Division should be affirmed.
*123 B
In Matter of Francis Charles W., Jr., Samuel W. and David C, petitioner presented three witnesses at the fact-finding hearing: Deputy Paul Carey from the Abused Persons Unit of the Onondaga County Sheriff’s Department; Richard J. Stone, Francis’ foster father; and Merlene White, a former neighbor of respondent. Deputy Carey testified to three separate interviews he conducted with the children during which each child described incidents of sexual abuse by respondent. Deputy Carey prepared a written affidavit, accompanied by two anatomically correct diagrams (one of a young male and one of a mature female), which Francis, then 11, read and signed under oath. Additionally, Deputy Carey prepared and signed under oath two contemporaneous affidavits which summarized the interviews he conducted with Samuel and David (see, Family Ct Act § 1046 [a] [iv]). These three affidavits were admitted into evidence. Further, Francis’ foster father testified that in a conversation with his stepson, Francis described generally sexual acts which previously occurred between Francis and respondent and each of the other brothers and respondent. Finally, Merlene White described an incident, which occurred six months earlier, where Samuel and David put their hands inside respondent’s shirt and fondled her breasts for 5-10 minutes, and other incidents which occurred five years and three years earlier where respondent punished Francis with a two-inch leather belt. Respondent did not testify on her own behalf. Her sister testified but her testimony was directed solely to impeaching Merlene White’s testimony.
Thus, the petitioner’s proof consisted principally of two levels of admissible hearsay statements describing incidents of sexual abuse. First, there were the out-of-court statements Francis made to Deputy Carey and his foster father and those contained in Francis’ affidavit. Those hearsay statements could not be used to cross-corroborate each other because section 1046 (a) (vi) provides that "previous statements made by the child relating to any allegations of abuse or neglect shall be admissible in evidence, but if uncorroborated, such statements shall not be sufficient to make a fact-finding of abuse or neglect” (Family Ct Act § 1046 [a] [vi] [emphasis added]). The natural meaning of that language is that repetition of an accusation by a child does not corroborate the child’s prior account of it.
In addition to Francis’ hearsay statements, however, there *124 were admissible hearsay statements by his two brothers, Samuel and David. These statements could properly be used to cross-corroborate Francis’ statements and each other because section 1046 (a) (vi) provides that '[ajny other evidence tending to support the reliability of the previous statements, including, but not limited to the types of evidence defined in this subdivision shall be sufficient corroboration” (emphasis added). Inasmuch as Samuel and David’s statements were types of evidence defined in the section, they could be used to corroborate their brother’s statement of his abuse. Although the use of cross corroboration has been criticized, we have recognized that independent statements requiring corroboration may corroborate each other, even in criminal prosecutions involving sexual abuse (see, People v Coleman, 42 NY2d 500, 506; see also, People v Jackson, 121 AD2d 743, affd 70 NY2d 768; People v Allen, 99 AD2d 592, affd 64 NY2d 979; People v Keindl, 68 NY2d 410, 423, supra; see also, Matter of Tantalyn TT., 115 AD2d 799, 801; Matter of Cindy JJ., 105 AD2d 189, 190-191). In criminal cases, of course, the corroborating witnesses testify under oath at trial, but the nature of the evidence, and its acceptance for purposes of corroboration, is the same.
The statements of each of the three brothers in this proceeding tend to support the statements of the others and, viewed together, give sufficient indicia of reliability to each victim’s out-of-court statements. Specifically, both Francis and David described an incident in which respondent had David put a "stick” into respondent’s vagina while Francis looked on. Additionally, both Samuel and Francis described separate incidents where respondent came into each child’s bedroom in the middle of the night and had sexual relations, hand to penis contact and mouth to penis contact, with each child after which she threatened each child not to tell anyone about the incidents. Because each child had consistently and independently described these particularly detailed sexual acts, the reliability of the victim’s out-of-court statements could be weighed by comparing them. Thus, the courts below were justified in finding each victim’s hearsay statements were sufficiently corroborated to create a prima facie case of sexual abuse under section 1046 (a) (vi) by the statements of the other victims and because a prima facie case was established, the affirmed factual findings of abuse are beyond this court’s review.
Accordingly, the Appellate Division orders in Matter of *125 Nicole V. and Matter of Francis Charles W. should be affirmed.
Chief Judge Wachtler and Judges Kaye, Alexander, Ti-tone, Hancock, Jr., and Bellacosa concur.
In each case: Order affirmed, without costs.

. Family Court Act § 1046 (a) (vi) provides that in any hearing under article 10: "(vi) previous statements made by the child relating to any allegations of abuse or neglect shall be admissible in evidence, but if uncorroborated, such statements shall not be sufficient to make a fact-finding of abuse or neglect. Any other evidence tending to support the reliability of the previous statements, including, but not limited to the types of evidence defined in this subdivision shall be sufficient corroboration. The testimony of the child shall not be necessary to make a fact-finding of abuse or neglect”. Respondent in Nicole V. erroneously contends the 1985 amendment does not apply in his proceeding. Because this amendment was meant to clarify, and not expand the prior version, the Legislature provided it should "take effect immediately [Aug. 1, 1985] and shall apply to all actions and proceedings pending or commenced on or after the effective date of this act” (L 1985, ch 724, § 2).

. Respondent’s constitutional arguments, raised for the first time in this court, are not preserved (Matter of Barbara C., 64 NY2d 866, 868; Matter of Peter L., 59 NY2d 513, 519).