THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TERRY LYNN RIDGEWAY, Defendant-Appellant.

Fourth District    No. 4—89—0218

Opinion filed February 28, 1990.

Daniel D. Yuhas and Lawrence Bapst, both of State Appellate Defender's Office, of Springfield, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Kenneth R. Boyel, Robert J. Biderman, and James W. Ackerman, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LUND delivered the opinion of the court:

Following a jury trial in the circuit court of McLean County, Terry Ridgeway, defendant, was convicted of two counts of aggravated criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 12—14(b)(1)) and one count of aggravated criminal sexual abuse (Ill. Rev. Stat. 1985, ch. 38, par. 12—16(c)(1)). He was sentenced to eight years' imprisonment on each assault count, and to five years' imprisonment on the abuse count, all to run concurrently.

The alleged victim, E.H., was five years old at the time of the alleged offense. E.H. was living in a trailer with his mother and his brother, J.H. The defendant was staying in the trailer with E.H.'s mother. The alleged criminal violations involved defendant's putting his mouth on E.H.'s penis and putting his penis in E.H.'s mouth.

The evidence which led to the convictions consisted of: (1) E.H., at age seven, testifying to the event; (2) J.H., at age nine, testifying E.H. had told him of the events on two occasions, and J.H. telling his mother in front of defendant of E.H.'s complaint; (3) E.H.'s natural father testifying as to E.H.'s abnormal sexual conduct; (4) an employee of the Illinois Department of Children and Family Services (DCFS), who was trained to deal with sexual abuse cases, testifying as an expert that E.H.'s abnormal actions were consistent with an analysis of child sexual abuse or molestation; and (5) the testimony of a law officer, who used anatomically correct dolls in questioning E.H. about the alleged offense.

Defendant appeals, contending three reversible errors occurred:

(1) the trial court abused its discretion in ruling that E.H. was competent to testify; (2) the trial court continually allowed leading questions of E.H. and J.H.; and (3) the evidence of E.H.'s behavior several months after the alleged incidents and the testimony of the investigator for DCFS was irrelevant.

Our examination of the record indicates there was uncertainty by E.H., at times, when he was being examined for the purposes of qualification. At times, he expressed ignorance as to the meaning of truth. Several pages of testimony involved the qualification. Finally, the trial judge examined E.H. as to the meaning of truth and, during this examination, it appeared that E.H. knew the value of truth, as contrasted to lying. He understood that he could be punished if he did not tell the truth.

██ Our supreme court has set forth a test for determining competency of a child witness as follows:

"It is the degree of a child's intelligence, rather than mere chronological age, that determines a child's competence, and '[i]f the witness was sufficiently mature to receive correct impressions by her senses, to recollect and narrate intelligently, and to appreciate the moral duty to tell the truth, she was competent.' (*People v. Davis* (1957), 10 Ill. 2d 430, 436, *cert. denied* (1957), 355 U.S. 820, 2 L. Ed. 2d 35, 78 S. Ct. 25. See also *People v. Edwards* (1973), 55 Ill. 2d 25, 33, *cert. denied* (1974), 415 U.S. 928, 39 L. Ed. 2d 486, 94 S. Ct. 1438; *People v. Brown* (1972), 52 Ill. 2d 94, 104-05; *People v. Ballinger* (1967), 36 Ill. 2d 620, 622, *cert. denied* (1967), 388 U.S. 920, 18 L. Ed. 2d 1366, 87 S. Ct. 2141.) There is no rigid formula which is applicable to a determination of competency, and the record reflects that the trial court was satisfied by Denise's responses to his questions that she was competent to testify. Decisions as to the competency of a witness are reviewable, but in light of the trial court's opportunity to take into account the demeanor of the witness, this court has held that such determinations will be overturned only when it appears that the trial judge has abused his discretion. (*People v. Brown* (1972), 52 Ill. 2d 94, 105; *People v. Ballinger* (1967), 36 Ill. 2d 620, 622; *People v. Davis* (1957), 10 Ill. 2d 430, 437.) This court has approved findings of competency based upon much weaker evidence than we have here (see, *e.g., People v. Ballinger* (1967), 36 Ill. 2d 620), and in our judgment, the trial judge did not err in permitting Denise to testify." *People v. Garcia* (1983), 97 Ill. 2d 58, 75, 454 N.E.2d 274, 280.

■ The record in the present case indicates the great difficulty in dealing with young children as witnesses. Children are necessary witnesses in most cases involving sexual abuse of youngsters. Such wrongful conduct takes place in secrecy and the evidence, other than the child's complaints, is often limited. The child witness is placed in front of strange faces and required to relate unpleasant encounters. The court appearance itself is a traumatic experience. Previous decisions of the appellate and supreme courts are little help in deciding the issue now presented to us. Each case rests on its own facts, and each child is different. In this case, the trial judge finally cut through the contradictions created by the examination by the State and the defense. He observed the seven-year-old boy, heard his responses, and decided that his testimony on the crucial issue would be competent. We cannot say his decision was an abuse of discretion. We are fully aware of the value of the actual observation of the child in the courtroom in making competency decisions of this kind.

As to the issue of leading questions, the record indicates that the State was allowed to elicit necessary details of the offenses by the use of leading questions in examining both E.H. and his older brother, J.H. The leading of J.H., the older brother of E.H., became necessary because J.H. refused to use specific terms in describing the male sexual organ and the sexual act. His testimony was corroborating in nature, as he was relating that E.H. had complained to him about what the defendant had done. J.H. also testified he relayed the complaint to his mother, in defendant's presence. The leading of J.H. consisted mainly of including the explicit terminology, which J.H. refused to use.

■ Allowing leading questions, when examining children of tender years, is clearly within the discretion of the trial court. (*People v. Server* (1986), 148 Ill. App. 3d 888, 895, 499 N.E.2d 1019, 1024, *cert. denied* (1987), 484 U.S. 842, 98 L. Ed. 2d 88, 108 S. Ct. 131; *People v. Smith* (1957), 11 Ill. 2d 280, 285, 143 N.E.2d 50, 52; *People v. Luigs* (1981), 96 Ill. App. 3d 700, 707, 421 N.E.2d 961, 967.) For reasons already set forth in this opinion, we will not unduly limit the trial court's discretion in allowing children to be questioned. Such action on our part would interfere with the truth-serving process and would interfere with the enforcement of the laws concerning sexual abuse of children. The defense was not limited as to cross-examination, or as to argument relating to the issue of leading witnesses.

■ We have carefully examined the trial record. E.H. related the family living arrangements, the facts surrounding the offense and, though he was led as to the specific details, his answers were definite.

J.H.'s testimony was definite. It was obvious that relating sexual terminology was an emotional experience. The trial court did not abuse its discretion in allowing the leading questions.

The father of E.H. testified that E.H.'s conduct changed after the time of the alleged offense, in that he yelled at a male jogger that he wanted to get into his pants, he played with his own penis, and played with the sex organ of a male dog. Eric Crook, an investigator for DCFS, when asked a hypothetical question relating to the actions of E.H., testified the conduct was consistent with an analysis of child sexual abuse and molestation. There was no objection to the hypothetical question or the answer. The objections relating to Crook's testimony concerned the issue of whether the State had adequately furnished discovery information.

██ Crook has a master's degree in social work from the University of Illinois, and has been in child welfare work for 19 years. He has investigated, according to his testimony, approximately 300 allegations of child sexual abuse, and has been qualified as an expert regarding instances of child molestation and abuse at least 100 times. He testified he has special training in the dynamics of sexually abusing families and the behavior of sexually abused children. Even though defendant did not question Crook's qualifications, we determine that an adequate foundation was presented by the State to establish his expertise. The defense contends that the conduct of E.H. at a later date was not relevant and Crook's testimony was also not relevant. We disagree.

As stated in *People v. Johnson* (1986), 114 Ill. 2d 170, 193, 499 N.E.2d 1355, 1365, *cert. denied* (1987), 480 U.S. 951, 94 L. Ed. 2d 802, 107 S. Ct. 1618:

> "Relevant evidence is that having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without such evidence."

██ Neither the State nor defendant has cited authorities specifically holding that a bizarre acting out in a sexually related manner by a young boy can be used as evidence of the child's being sexually molested. However, we have recently held that the evidence of rape-trauma syndrome can be used in the State's case in chief. (*People v. Douglas* (1989), 183 Ill. App. 3d 241, 256-57, 538 N.E.2d 1335, 1344.) The battered-woman syndrome was recognized admissible as evidence in *People v. Minnis* (1983), 118 Ill. App. 3d 345, 357, 455 N.E.2d 209, 217. In *Server*, the expert witness was allowed to describe the rape-trauma syndrome. The *Server* witness was asked if the behavior of

the child victim was consistent with the model normally known as the victim of child sexual assault. She testified that the child exhibited no behavior inconsistent with that model. (See *Server*, 148 Ill. App. 3d at 897, 499 N.E.2d at 1025.) Other legal studies are recognizing that certain conduct indicates the sexually abused child syndrome. (See Comment, *The Admissibility of Expert Testimony in Intrafamily Child Sexual Abuse Cases*, 34 UCLA L. Rev. 175 (1986) (authored by Elaine R. Cacciola.) The expert witness testifying in *Server* stated behavioral disorders indicating sexual abuse, among other things, "may include problems at school, and writing things that may not have been appropriate for that child previously." *Server*, 148 Ill. 3d at 896, 499 N.E.2d at 1025.

We conclude, in the absence of any objection to Eric Crook's qualifications or objections to the hypothetical question, that the evidence of E.H.'s bizarre conduct and the opinion by Crook were properly introduced and were relevant to the issue of whether E.H. had been sexually abused.

■■ ■ Where the testimony of a victim of a crime of child sexual abuse is not clear and convincing, it must be substantially corroborated by some other factual evidence or circumstances. (*Server*, 148 Ill. App. 3d at 895, 499 N.E.2d at 1024; *People v. Leamons* (1984), 127 Ill. App. 3d 1056, 1067, 469 N.E.2d 1137, 1145.) We find the evidence by J.H. relating his brother's complaints, the existence of the defendant being alone with the victim, and the evidence of E.H.'s bizarre conduct, taken with Crook's expert opinion, provided sufficient corroborating evidence to sustain the conviction. The defendant's conviction should be affirmed.

Affirmed.

SPITZ and McCULLOUGH, JJ., concur.