THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ART NELSON, Defendant-Appellant.

Fifth District   No. 5—88—0687

Opinion filed October 3, 1990.

Daniel M. Kirwan and Dan W. Evers, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Charles Grace, State's Attorney, of Murphysboro (Charles Garnati, Special Assistant State's Attorney, and Kenneth R. Boyle, Stephen E. Norris, and Debra A. Buchman, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE RARICK delivered the opinion of the court:

Defendant, Art Nelson, was found guilty after a jury trial of aggravated criminal sexual assault and aggravated criminal sexual abuse and was sentenced by the circuit court of Jackson County to 10 years' imprisonment for the aggravated criminal sexual assault. Defendant appeals his conviction, arguing the court improperly allowed the testimony of the State's expert to be presented to the jury. We affirm.

According to the evidence presented at trial, the victim first became acquainted with defendant when he was in the third grade. The victim, his father, and defendant would all go fishing together. By the time the victim was in the fifth grade, he was allowed to go fishing alone with defendant. Defendant would buy him snack cakes for such trips and often stopped at a Dairy Queen for ice cream afterwards. Often defendant would allow the victim to drive the car if the victim sat on defendant's lap while so doing. Eventually the victim noticed defendant frequently encouraged him to go to the bathroom and would try to get close to him while he was urinating. In the summer between the fifth and sixth grades, defendant's encouragement culminated in touching the victim's penis with both his hands and mouth. The last incident occurred sometime in February of 1987 while the victim was in sixth grade. The victim refused to go on any other fishing trips with defendant after the assault in February but did not tell anyone about defendant's activities. Sometime in April, the victim's mother, after hearing some rumors, questioned the victim about defendant and whether he ever had done anything "bad" to the victim. The victim eventually revealed the nature of the activities to his mother and a caseworker from the Department of Children and Family Services. The victim's mother further testified the victim no longer wanted to go fishing with anyone, his grades in school had dropped and he often was afraid, sleeping on the floor of his parents' bedroom. Defendant denied any abuse had occurred. He believed the accusa-

tions arose from ill-feelings between the two families. He further testified he had worked the first three Saturdays in February and on the fourth Saturday went fishing with some friends at another lake than where the alleged abuse occurred. The jury, however, chose to believe the victim.

Defendant argues on appeal he was denied a fair trial through the rebuttal testimony of the State's expert, Dr. Hoffman, a psychologist. According to defendant, Dr. Hoffman, in relating to the jury the victim's behavior and attitude not only was allowed to testify to hearsay statements of the victim, but also was allowed to place the weight of her opinion behind the credibility of the victim. More importantly, she was permitted to explain to the jury the "child sexual abuse syndrome" and how the victim's behavior coincided with such a syndrome when the field of psychology, according to defendant's expert, has not recognized the term. In ruling on his post-trial motion, the trial court apparently agreed with defendant that the expert's testimony pertaining to the child sexual abuse syndrome was improper but amounted to nothing more than harmless error in this instance. Defendant takes exception with this finding, arguing that when the only evidence against him came from the victim, the expert went too far in diagnosing the victim as suffering from the syndrome, being the equivalent of an assertion by a professional that the victim was being truthful when admittedly much of the victim's behavior could have been caused by other factors.

We, like many other jurisdictions, are increasingly faced with cases of sexual abuse of children. And, like many other jurisdictions, we are now required to decide whether certain types of expert testimony pertaining to such abuse, particularly the child sexual abuse syndrome, are admissible to aid the prosecution in presenting its case. Given the nature of the crime and perceived inherent weaknesses of such cases, a young, often traumatized child pitted against a seemingly respectable adult, this is not a surprising development. (See generally Gardner, *Prosecutors Should Think Twice Before Using Experts in Child Abuse Cases*, 3 Crim. Just. 12, 12 (1988); Roe, *Expert Testimony in Child Sexual Abuse Cases*, 40 U. Miami L. Rev. 97, 97 (1985); Comment, *The Admissibility of Expert Testimony in Intrafamily Child Sexual Abuse Cases*, 34 U.C.L.A. L. Rev. 175, 175-76 (1986) (hereinafter cited as *Intrafamily Child Sexual Abuse*).) With this opinion, we choose to join the ranks of those jurisdictions which, in limited circumstances, allow expert testimony pertaining to the child sexual abuse syndrome.

■■ In general, "syndrome" refers to a concurrence of symptoms

or a group of signs tending to indicate a particular condition. (See Note, *The Syndrome Syndrome: Problems Concerning the Admissibility of Expert Testimony on Psychological Profiles*, 37 U. Fla. L. Rev. 1035, 1036 (1985); Comment, *Syndrome Testimony in Child Abuse Prosecutions: The Wave of the Future?*, 8 St. Louis U. Pub. L. Rev. 207, 208 (1989).) The child sexual abuse syndrome, also known as the child sexual abuse accommodation syndrome, then refers to that group of symptoms or behavior patterns typically manifested by young victims of sexual abuse. (See Summit, *The Child Sexual Abuse Accommodation Syndrome*, 7 Int'l J. Child Abuse & Neglect 177 (1983).) One scholar, Dr. Ronald Summit, lists five such typical reactions or stages under the label of child sexual abuse accommodation syndrome, these being: (1) secrecy; (2) helplessness; (3) entrapment and accommodation; (4) delayed, conflicted, and unconvincing disclosure; and (5) retraction. (Summit, 7 Int'l J. Child Abuse & Neglect at 181-88.) Other researchers, on the other hand, believe the number of possible symptom constellations is infinite because of the various degrees of abuse committed upon children from various backgrounds and ages. (See McCord, *Expert Psychological Testimony About Child Complaints in Sexual Abuse Prosecutions: A Foray into the Admissibility of Novel Psychological Evidence*, 77 J. Crim. L. & Criminology 1, 18-24 (1986); Comment, *The Admissibility of Expert Psychological Testimony in Cases Involving the Sexual Misuse of a Child*, 42 U. Miami L. Rev. 1033, 1048-50 (1988) (hereinafter cited as *Expert Psychological Testimony*).) What is certain, however, is that children who have been sexually abused behave differently from children who have not been abused. Explaining such differences is the critical element, not what label may be selected to aid in the explanations.

We are not unfamiliar with syndrome testimony in general. Our courts have previously found admissible evidence of rape trauma syndrome (see *People v. Douglas* (1989), 183 Ill. App. 3d 241, 256-57, 538 N.E.2d 1335, 1344), battered child syndrome (*People v. Platter* (1980), 89 Ill. App. 3d 803, 819, 412 N.E.2d 181, 193), and battered woman syndrome (see *People v. Minnis* (1983), 118 Ill. App. 3d 345, 356-57, 455 N.E.2d 209, 217-18). We have even gone so far as to allow experts to explain or testify with respect to the behavior of child victims being consistent with certain models for victims of child sexual assault under the guise of the rape trauma syndrome (*People v. Server* (1986), 148 Ill. App. 3d 888, 897-99, 499 N.E.2d 1019, 1025-26) (superseded in part by statute as stated in *People v. Morton* (1989), 188 Ill. App. 3d 95, 543 N.E.2d 1366, on unrelated issue), or under the label of post-traumatic stress syndrome (*People v. Roy* (1990), 201 Ill. App. 3d 166,

180; *People v. Kelly* (1989), 185 Ill. App. 3d 43, 50-51, 540 N.E.2d 1125, 1130-31). (See also *People v. Ridgeway* (1990), 194 Ill. App. 3d 881, 886-87, 551 N.E.2d 790, 792-93 (expert testimony admissible but not labeled under any particular syndrome although sexually abused child syndrome mentioned in passing).) The clear trend in Illinois is toward the admission of expert testimony pertaining to psychological syndromes where such evidence aids the trier of fact. Generally speaking, expert testimony will be admitted if the expert has some knowledge or experience, not common to the world, which will aid the finder of fact in arriving at a determination on the question or issue. (*Douglas*, 183 Ill. App. 3d at 256, 538 N.E.2d at 1344; *Server*, 148 Ill. App. 3d at 897-98, 499 N.E.2d at 1025-26.) Behavioral and psychological characteristics of child sexual abuse victims are proper subjects for expert testimony. Few jurors have sufficient familiarity with child sexual abuse to understand the dynamics of a sexually abusive relationship. (See Gardner, 3 Crim. Just. at 14; McCord, 77 J. Crim. L. & Criminology at 34-36; Serrato, *Expert Testimony in Child Sexual Abuse Prosecutions: A Spectrum of Uses*, 68 B.U.L. Rev. 155, 170-71 (1988).) Additionally, the behavior exhibited by sexually abused children is often contrary to what most adults would expect. (See *Intrafamily Child Sexual Abuse*, 34 U.C.L.A. L. Rev. at 203.) We therefore see no reason to withhold expert testimony from the jury explaining a child victim's "unusual" behavior merely because the expert chooses to describe such behavior under a certain label.

Defendant argues, however, literature in the field of psychology does not recognize "child sexual abuse syndrome." Our own research does not bear out defendant's contention. It is true the syndrome is not listed in the Diagnostic and Statistical Manual of Mental Health III (D.S.M. III). This, however, is but one factor to consider in balancing the probative value of the testimony against possible prejudice to the defendant or confusion for the jury. Indeed, very few concepts are generally accepted by all behavioral scientists. (See McCord, 77 J. Crim. L. & Criminology at 24-34.) Similarly, the reality that many of the symptoms may be caused by factors other than sexual abuse goes only to the weight to be accorded such testimony, not its admissibility. (See, *e.g.*, *State v. Myers* (Minn. 1984), 359 N.W.2d 604, 610-11.) The question really is not whether such testimony is admissible at all, but rather how much of it can be admitted and under what circumstances.

■ Turning to other jurisdictions' handling of this question, from our research of the issue we note several approaches. At one extreme is the stand taken by Hawaii, which permits a psychologist to testify as to the credibility of the child victim's testimony, if adequately sup-

ported by comprehensible testimony which a jury could evaluate itself, pertaining to the occurrence of the abuse and the identity of the offender. (See *State v. Kim* (1982), 64 Hawaii 598, 607-10, 645 P.2d 1330, 1338-39. Contra *State v. Moran* (1986), 151 Ariz. 378, 382-83, 728 P.2d 248, 252-53; *People v. Ortega* (Colo. App. 1983), 672 P.2d 215, 218; *State v. Lash* (1985), 237 Kan. 384, 386, 699 P.2d 49, 51; *State v. Keen* (1983), 309 N.C. 158, 162-64, 305 S.E.2d 535, 537-38.) Other jurisdictions permit the expert to testify regarding the results of a psychological evaluation of the child and to determine whether the results of such an examination are consistent with those expected for a child victim subjected to sexual abuse. (See *Kruse v. State* (Fla. App. 1986), 483 So. 2d 1383, 1387-88; *Myers*, 359 N.W.2d at 609-10; *In re Nicole V.* (1987), 123 A.D.2d 97, 106-09, 510 N.Y.S.2d 567, 573-74, *aff'd* (1987), 71 N.Y.2d 112, 518 N.E.2d 914, 524 N.Y.S.2d 19; *State v. Middleton* (1983), 294 Or. 427, 432-38, 657 P.2d 1215, 1217-21. See also *Allison v. Georgia* (1987), 256 Ga. 851, 353 S.E.2d 805; *State v. Snapp* (1986), 110 Idaho 269, 715 P.2d 939; *People v. Beckley* (1987), 161 Mich. App. 120, 409 N.W.2d 759, *aff'd* (1990), 434 Mich. 691, 456 N.W.2d 391; *State v. Maule* (1983), 35 Wash. App. 287, 667 P.2d 96.) Still other approaches permit experts who have not evaluated the particular victim to present testimony pertaining to general behavior patterns and psychological symptoms associated with sexual abuse and then to apply such knowledge to either hypothetical facts presented or to facts admitted into evidence. Others restrict the expert's testimony to a discussion of general principles only, thereby leaving the application of these principles to the trier of fact. (See *State v. Moran* (1986), 151 Ariz. 378, 384-86, 728 P.2d 248, 254-56; *People v. Gray* (1986), 187 Cal. App. 3d 213, 217-20, 231 Cal. Rptr. 658, 660-62; *People v. Roscoe* (1985), 168 Cal. App. 3d 1093, 1099-1100, 215 Cal. Rptr. 45, 49-50; *Commonwealth v. Baldwin* (1985), 348 Pa. Super. 368, 373-79, 502 A.2d 253, 255-57, *disapproved of in part by Commonwealth v. Davis* (1988), 518 Pa. 77, 541 A.2d 315 (error for expert to give opinion regarding credibility of child sexual abuse victims).) Many of these same jurisdictions also allow the expert to refer specifically to the term "child sexual abuse syndrome" or one of its variants in their testimony to the jury. (See *People v. Gray* (1986), 187 Cal. App. 3d 213, 231 Cal. Rptr. 658; *Wheat v. State* (Del. 1987), 527 A.2d 269; *Allison v. State* (1987), 256 Ga. 851, 353 S.E.2d 805; *State v. Snapp* (1986), 110 Idaho 269, 715 P.2d 939; *State v. Carlson* (Minn. App. 1985), 360 N.W.2d 442; *People v. Grady* (1986), 133 Misc. 2d 211, 506 N.Y.S.2d 922.) Those jurisdictions, on the other hand, which do not allow the use of child sexual abuse syndrome testimony

include Kentucky (see *Bussey v. Commonwealth* (Ky. 1985), 697 S.W.2d 139 (syndrome testimony immaterial to establishing defendant's guilt)), Mississippi (see *Hosford v. State* (Miss. 1990), 560 So. 2d 163 (syndrome testimony not sanctioned but general testimony admissible especially when elicited in direct response to assault on credibility of victim)), Ohio (see *State v. Davis* (Ohio Ct. App. Dec. 29, 1989), No. CA88—09—017 (available on Westlaw 1989 W.L. 157206) (syndrome testimony impermissible because it has no scientific reliability and improperly bolsters uncorroborated victim's testimony)) and Tennessee (see *State v. Schimpf* (Tenn. Crim. App. 1989), 782 S.W.2d 186 (syndrome testimony invades jury's province as to credibility of victim)). (See also *State v. Rimmasch* (Utah 1989), 775 P.2d 388 (testimony concerning typical child abuse profile inherently unreliable).) This lack of uniformity among the various jurisdictions is not surprising; attempts to expand testimony into new fields often result in judicial confusion and inconsistency. (See *Werner v. State* (Tex. Crim. App. 1986), 711 S.W.2d 639, 649 (Teague, J., dissenting).) We should not, however, be unduly prejudiced against the introduction of expert testimony based upon a theory in its relative infancy.[1] We therefore choose to follow the reasoning of the majority of the jurisdictions which fall in the middle of the extremes of absolute rejection as represented by Ohio and absolute acceptance to the point of vouching for the credibility of the victim as represented by Hawaii. This middle position ensures that the trier of fact will be informed as to the general characteristics exhibited by victims of child abuse, which often are inexplicable or conflicting, but at the same time will not invade the province of that same trier of fact in weighing the credibility of witnesses. The mere fact an expert's testimony, if believed, tends to bolster the victim's credibility does not make such evidence inadmissible. The testimony of one witness often corroborates or enhances that of another. The jury, however, is still free to disregard such evidence. (See *Server*, 148 Ill. App. 3d at 897, 499 N.E.2d at 1026; Roe, 40 U. Miami L. Rev. at 109.) Nor should we hold expert testimony inadmissible merely because it may include an ultimate issue to be decided by the trier of fact, *i.e.*, whether the victim had indeed been abused. (See *People v. Harp* (1990), 193 Ill. App. 3d 838, 845-46, 550 N.E.2d 1163,

---

[1]One commentator also notes that an expert testifying as to general facts obtained through the application of traditional research methods is not applying new scientific techniques but rather is testifying as to facts within either personal knowledge or contained in learned treatises reasonably relied upon by experts in the field. See *Expert Psychological Testimony*, 42 U. Miami L. Rev. at 1060. See also *People v. Beckley* (1990), 434 Mich. 691, 717-21, 456 N.W.2d 391, 402-04.

1168.) Medical experts traditionally have been allowed to testify on numerous issues ultimately to be decided by a jury. (See *Kruse v. State*, 483 So. 2d at 1387. Contra *Allison v. State*, 256 Ga. at 853, 353 S.E.2d at 808.) We also do not believe that by allowing such testimony we are encouraging a battle of experts any different than those commonly found in any case involving expert testimony. Again, the jury ultimately must choose which group of experts to believe. (See Serrato, 68 B.U.L. Rev. at 184.) This does not mean, however, we are wholeheartedly accepting child sexual abuse syndrome testimony under all circumstances. At this time, we choose to limit the admissibility of such testimony to rebuttal after the victim's credibility has first been attacked. Under such circumstances, defendant's own actions have necessitated the use of syndrome testimony, especially when defense counsel emphasizes some unusual aspect of the victim's behavior such as recantation or delayed reporting. (See *People v. Dunnahoo* (1984), 152 Cal. App. 3d 561, 577, 199 Cal. Rptr. 796, 804; *People v. Benjamin R.* (1984), 103 A.D.2d 663, 669, 481 N.Y.S.2d 827, 832. See also *Hosford,* 560 So. 2d at 166 (even though syndrome testimony in general not allowed, expert allowed to explain victim's behavior in response to assault on credibility). *Cf. People v. Bergschneider* (1989), 211 Cal. App. 3d 144, 158-60, 259 Cal. Rptr. 219, 226-28 (prosecutor not limited to introducing expert testimony on rebuttal if misconceptions targeted during case in chief).) To prohibit syndrome testimony in these instances would, in effect, for example in the situation of recantation, allow powerful impeachment evidence to remain unrebutted when a plausible reason exists why the jury should not give such impeachment the same weight as most prior inconsistent statements. (See McCord, 77 J. Crim. L. & Criminology at 61-62.) At the same time, however, admission of syndrome testimony on rebuttal, even if believed, would not be dispositive of the case, thereby ensuring defendant a fair trial.

Turning back to the specifics of this case, we initially note section 115—7.2 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1987, ch. 38, par. 115—7.2) provides:

"In a prosecution for an illegal sexual act perpetrated upon a victim, including but not limited to prosecutions for violations of Sections 12—13 through 12—16 of the Criminal Code of 1961, expert testimony by a behavioral psychologist, psychiatrist or physician relating to any recognized and accepted form of post-traumatic stress syndrome shall be admissible as evidence."

Effective January 1, 1989, the legislature amended this same section

to allow testimony from persons other than those in the medical field. (See Ill. Rev. Stat. 1989, ch. 38, par. 115—7.2.) Such an amendment reiterates the legislature's intention to grant the trial court broad discretion in the admission of evidence of post-traumatic syndromes from a qualified source. (See *Kelly*, 185 Ill. App. 3d at 51, 540 N.E.2d at 1130.) We believe such discretion is broad enough to include child sexual abuse syndrome testimony under the general label of post-traumatic stress syndrome. See *Roy*, 201 Ill. App. 3d at 180; *Server*, 148 Ill. App. 3d at 897-99, 499 N.E.2d at 1025-26.[2]

Here, Dr. Hoffman, a psychologist and expert in the field of child abuse, was called to testify only in rebuttal for a very limited purpose after the victim's credibility already had been attacked by defendant. She explained how children act when they have been sexually abused, how offenders act when they are trying to lure children into a situation where they may be sexually abused and how the characteristics displayed by this particular victim were consistent with those which could be expected to be displayed by a victim of sexual abuse. She made no reference on direct examination to the person who may have abused the victim, nor did she testify the victim was sexually abused or that the victim was telling the truth. She also did not include descriptions of the actual acts related to her by the victim. Any limited references to the victim's description of the offense were properly offered to explain the reason for the victim's behavior. She did not attempt to inform the jury whose credibility was paramount nor did she try to bolster the victim's testimony. Moreover, she herself pointed out the lack of recognition of child sexual abuse syndrome in D.S.M. III. She further informed the jury of the possibility that the "unusual" behaviors she observed in the victim could have been triggered by factors other than sexual abuse. Finally, at the conclusion of her testimony, the court admonished the jury that her testimony was admitted "for the limited purpose of giving testimony regarding child sexual abuse syndrome." In addition, the jury heard testimony by defendant's expert disputing Dr. Hoffman's knowledge and testimony concerning child sexual abuse syndrome. Under such circumstances, we cannot say the court abused its discretion in allowing the testimony of Dr. Hoffman, even though the court, upon reflection, later indicated perhaps such testimony should not have been allowed. See

---

[2]We note the expert called to testify here, while not diagnosing the victim as suffering from post-traumatic stress, did state she could have justified such a diagnosis. The expert further stated a syndrome relating to sexually abused children would be included under post-traumatic stress syndrome.

*Ridgeway*, 194 Ill. App. 3d 881, 551 N.E.2d 790; *Server*, 148 Ill. App. 3d 888, 499 N.E.2d 1019. See also *Kelley*, 185 Ill. App. 3d 43, 540 N.E.2d 1125. But see *People v. Bradley* (1988), 172 Ill. App. 3d 545, 526 N.E.2d 916 (error to allow expert to testify on characteristics of child abuse perpetrators).

Defendant argues, however, the expert went too far by diagnosing the victim as suffering from child sexual abuse syndrome. Defendant misses the point. While in general it may be true that it is not proper medically to diagnose the existence of a syndrome (see McCord, 77 J. Crim. L. & Criminology at 67; *Expert Psychological Testimony*, 42 U. Miami L. Rev. at 1046-48), any possible confusion or error here was prompted by defendant himself. On cross-examination, defendant specifically asked Dr. Hoffman if she had diagnosed the victim as having the characteristics of a sexually abused child. Any "vouching" for the credibility of the victim therefore resulted from defendant's own trial tactics. Under such circumstances, defendant cannot be heard to complain on appeal with respect to any error he created or caused. See *Harp*, 193 Ill. App. 3d at 844, 550 N.E.2d at 1167. See also *Douglas*, 183 Ill. App. 3d at 257, 538 N.E.2d at 1345.

■ In light of all the testimony and evidence on the record before us, we believe the verdict of the jury was not so improbable that it had no reasonable basis. (See *People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 276-77; *People v. James* (1990), 200 Ill. App. 3d 380, 558 N.E.2d 732.) Even though there were minor inconsistencies in the victim's testimony, that testimony was certain regarding the offense and the manner in which it occurred. See *Ridgeway*, 194 Ill. App. 3d at 887, 551 N.E.2d at 793; *Server*, 148 Ill. App. 3d at 895, 499 N.E.2d at 1024. See also *Douglas*, 183 Ill. App. 3d at 251-53, 538 N.E.2d at 1341-42.

For the aforementioned reasons, we affirm the judgment of the circuit court of Jackson County.

Affirmed.

CHAPMAN and GOLDENHERSH, JJ., concur.