THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TOMMY KELLY, a/k/a Wayne Kelly, Defendant-Appellant.

Third District   No. 3—88—0371

Opinion filed June 26, 1989.

HEIPLE, J., concurring in part and dissenting in part.

Braud/Warner, Ltd., of Rock Island (Duane Thompson, of counsel), for appellant.

Larry VanDerSnick, State's Attorney, of Cambridge (Gary F. Gnidovec, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BARRY delivered the opinion of the court:

Defendant was charged with two counts of aggravated criminal sexual assault, a Class X felony (Ill. Rev. Stat. 1987, ch. 38, pars. 12—14(b)(1), (c)). The alleged victims of the offenses were five-year old Amy Sims and her seven-year-old cousin, Sara Sims. After a jury trial, defendant was found guilty of aggravated criminal sexual assault against Sara and aggravated criminal sexual abuse of both girls. He was found not guilty of aggravated criminal sexual assault against Amy. Defendant was sentenced to eight years in the Department of Corrections on the Class X felony and five years for the lesser offense against Amy, the sentences to run concurrently. Defendant appeals from his convictions.

The State's evidence as presented at trial established that Sara Sims is the daughter of Patricia Sims, who was married to a Fred Hill

for a period of time prior to July 1986. Sara lived with her mother in a trailer park in Colona, Illinois. Fred Hill resided in another trailer in the park after he and Patricia were divorced. Between June and the end of August 1986, Patricia baby-sat in her home for her niece, Amy. Patricia's sister, Sharon Sims, frequently took care of Sara at her home in Green Rock. Sharon testified that during the period of July and August 1986, Sara was very dirty when Sharon came to pick her up at Patricia's home. Sara wanted a lot of baths, and she became quiet and cried frequently during this period. However, Sharon did not attribute Sara's behavior to any abuse at the time.

On April 11, 1987, Sara telephoned Sharon and asked her to pick her up. Sara was quiet and wanted a bath. After she was dressed for bed, Sara began crying. According to Sharon, Sara said she was sorry and that she hurt between her legs. Sharon undressed the child and inspected Sara's vaginal area, noting that it was red and raw. Sara continued crying. She was shaking and acted very scared. Sharon asked Sara what had happened. Sara said that her mother had hit her with a flyswatter. Not satisfied with the response, Sharon again asked how she had been hurt. This time, Sara said that Fred Hill had poked her with his finger. The following morning, Sharon took Sara to a hospital for an examination.

Because of suspected abuse, Corporal Heidi Owens of the Colona police department came to Sharon's home on April 12 to investigate. After interviewing Sara, Owens had Fred Hill arrested and his trailer was searched for photographs. An appointment was made for Sara to see Dr. Linda Ozaki, a pediatrician practicing in Davenport, Iowa, on April 15. Ozaki's examination of Sara revealed an enlarged introitus, a tear at the back of the hymen and marked redness next to the hymen. Ozaki testified that her findings were consistent with a finger having been inserted in the child's vagina; however, she was unable to specify when the injuries had occurred. She could determine only that the injury to the hymen had not occurred within several days immediately preceding her examination.

Meanwhile, on the evening of April 14, Sharon received a telephone call from Vicky Sims, Amy's mother, indicating that Amy had been sexually abused by Fred Hill. Sharon immediately telephoned Owens, who launched another investigation. At the time, Amy was staying with her aunt, Kelly Tinney, at a trailer in the same park where Fred Hill and Patricia Sims lived. Owens talked with Amy for a while, but she became too upset and Owens returned to her regular duties. About an hour later, Mrs. Tinney called Owens back, stating that Amy refused to go to bed until she talked with Owens again.

Owens went back out to the trailer park, and this time Amy said that a second person, a "cross-eyed" man named Tom, was involved.

On April 16, Vicky telephoned Sharon and told her about Amy's report of another man. Sharon then sat down with Sara and asked her if anyone else had hurt her like Fred Hill had. At first Sara only cried and refused to talk about it. When she did acknowledge that there had been another man, she described him as a "cross-eyed" man named Tommy Kelly. According to Sharon, Sara said that he had "poked her with his finger too." At that point, Sharon reported again to Owens, and proceedings against defendant were initiated.

Owens testified that when Sharon and Sara came to her office on April 16, Owens showed Sara some pictures confiscated during the search of Fred Hill's trailer. Sara immediately identified defendant from one showing defendant and Fred Hill together on a couch in the living room of Hill's trailer.

Dr. Ozaki testified that she examined Amy Sims on April 20 and found that she had an enlarged introitus, but no signs of bruising or tearing of the vagina. Ozaki stated that her findings were consistent with finger penetration.

Fred Hill was tried and convicted separately before defendant's case came up for trial. In this case, Amy and Sara were both found competent to testify. Amy, with the aid of anatomically correct dolls, testified that defendant had touched her in her private area with his finger, that it hurt, and that he told her if she told anybody "they would send [her] away from home." Amy testified that Fred had "touched her down here" as well. She said that she and defendant were in the living room of Fred's trailer when defendant had touched her, and Fred had touched her in the kitchen.

Sara, also using the dolls, testified that defendant had touched her with his finger "in [her] naughty place." At the time, her panties were off and she and defendant were in the living room or kitchen of Fred's trailer. Amy and Fred were in the kitchen. She also stated that Fred had touched her in her "naughty place" when they were all in the living room. Afterwards, the men told the girls to "keep [their] mouths shut." Sara testified on cross-examination that Fred Hill had been bothering her for a long time, even when he was married to her mother.

Over defendant's objection, the State introduced testimony of Pamela Klein, a psychotherapist with expertise in the area of child sexual abuse and molestation. Klein testified to a theory of behavior known as the rape trauma syndrome. She described delayed disclosure within that context and explained the "double bind" or "ap-

proach avoidance situation" where a child is told to keep a secret and has also been taught to mind. In a molestation situation, the child knows what happened is wrong, but she is unable to communicate information about it. Klein, who had interviewed both girls prior to the trial, testified that their behavior—including their failure to report the molestation promptly, their refusal to disclose information to their mothers and their failure to identify both men when they initially disclosed that they had been molested—was not inconsistent with rape trauma syndrome.

Defendant and several friends and family members testified on defendant's behalf. Defendant acknowledged having stayed overnight in Fred Hill's trailer once in July 1986, but denied having seen either of the girls on that occasion. Defendant usually stayed with his mother or in an apartment in LeClaire, Iowa, and with his uncle in Moline, Illinois, during July and August when the girls were molested. Defendant testified that he worked every day from August 2 until sometime in October 1986 on a driveway for the mother of his friend, Russell Williams. Defendant's alibi was substantially corroborated by witnesses called by the defense.

In rebuttal, the State called Roger Sims, Amy and Sara's 16-year-old uncle, who testified that he frequently went swimming in the Rock River with friends in July and August 1986 and would stop by Fred Hill's trailer on the way. Sims testified that he had been introduced to defendant by Hill and had seen him in the trailer that summer on two, three or four occasions. Sims was certain that he had seen Sara in the trailer when defendant was there, but he could not state that Amy was there when he saw defendant in the trailer.

Defendant was found guilty of three of the four offenses charged and sentenced to concurrent terms of imprisonment, as aforesaid. His post-trial motion was denied, and he appeals from his convictions. The issues on appeal are: (1) whether the trial court erred in allowing testimony of hearsay statements of the minor victims; (2) whether the single-photograph identification procedure used by the investigator was impermissibly suggestive in this case; (3) whether the testimony of Pamela Klein was improperly admitted; and (4) whether the jury's verdicts were contrary to the manifest weight of the evidence.

■ Defendant first argues that the corroborative complaint testimony of Sharon Sims and Heidi Owen was improperly admitted because the minors' complaints were not made promptly and were elicited by suggestive questioning by the witnesses, and the witnesses' testimony focused on the identification of the perpetrator rather than on the fact that a complaint was made. Currently section 115—10 of

the Code of Criminal Procedure of 1963 (Code) provides in pertinent part:

"(a) In a prosecution for a sexual act perpetrated upon a child under the age of 13, \*\*\* the following evidence shall be admitted as an exception to the hearsay rule:

\*\*\*

(2) testimony of an out of court statement made by such child describing any complaint of such act or matter or detail pertaining to any act which is an element of an offense which is the subject of a prosecution for a sexual act perpetrated upon a child." (Ill. Rev. Stat. 1987, ch. 38, par. 115—10, as amended by Pub. Act 85—837, eff. Jan. 1, 1988.)

In its current form, the statute permits hearsay testimony concerning the details of sexual acts reportedly perpetrated upon the minor victims beyond the mere fact that a complaint was made. Compare Ill. Rev. Stat. 1987, ch. 38, par. 115—10, as amended by Pub. Act 83—1067, §3, eff. July 1, 1984.

■ Defendant's contention that the minor victims' delay in reporting the sexual acts renders their hearsay statements irrelevant and thus inadmissible has been consistently discounted by the Illinois Appellate Court interpreting section 115—10. (See *People v. Bailey* (1988), 177 Ill. App. 3d 679, 683, 532 N.E.2d 587, 590 (and cases cited therein).) The court's reasoning is that "[i]n the absence of a statutory requirement [that] there be no unexplained delay, \*\*\* it was the intent of the legislature that any evidence of delay in making the complaint will affect the weight, rather than the admissibility, of the evidence." (*Bailey*, 177 Ill. App. 3d at 683, 532 N.E.2d at 590.) This reasoning applies with equal force to defendant's argument that Sara's statements to Sharon Sims and Corporal Owens were in part elicited by questioning. Accordingly, we find no reversible error in the trial court's admission of the hearsay testimony of Sims and Owens concerning the circumstances of the sexual acts reported by Sara.

■ Further, hearsay testimony of Corporal Owens relative to Sara's identification of defendant was clearly admissible under section 115—12 of the Code (Ill. Rev. Stat. 1987, ch. 38, par. 115—12). Sara testified at trial, was available for cross-examination concerning her prior identification and made a positive in-court identification, thereby assuring the reliability of Owens' hearsay testimony. (See *People v. Page* (1987), 163 Ill. App. 3d 959, 974, 516 N.E.2d 1371, 1382, citing *People v. Hudson* (1985), 137 Ill. App. 3d 606, 484 N.E.2d 1246 ("Both the officer and the declarant must be present in court subject to cross-examination to assure the reliability of the [hearsay] state-

ment").) Moreover, with respect to Sharon Sims' hearsay testimony of Sara's identification of defendant, admission of her statement was merely cumulative, and, under the circumstances, if error, it was harmless beyond a reasonable doubt.

■ Nor do we find error in the trial court's denial of defendant's motion to suppress the minor victims' out-of-court identifications. As a rule, the use of a single-photograph display is unduly suggestive and gives rise to a substantial likelihood of irreparable misidentification if the totality of the circumstances surrounding the identification renders it unreliable. (*Manson v. Brathwaite* (1977), 432 U.S. 98, 53 L. Ed. 2d 140, 97 S. Ct. 2243.) Defendant in this case was described by specific, unique characteristics—his name and crossed eyes. He was further described as a friend of Hill's. These characteristics—together with the children's certainty upon viewing the photograph of defendant and Hill, and the circumstances surrounding the offenses that rendered the likelihood of misidentification remote (see *People v. Pruden* (1982), 110 Ill. App. 3d 250, 442 N.E.2d 284, 289 (and cases cited therein))—support the court's decision to admit evidence of the out-of-court, single-photograph identifications in this case.

■ Next, defendant argues that the admission of Pamela Klein's testimony as an expert was improper because she was not qualified as a behavioral psychologist, psychiatrist or physician pursuant to section 115—7.2 of the Code (Ill. Rev. Stat. 1987, ch. 38, par. 115—7.2). Prior to January 1, 1989, section 115—7.2 provided:

"In a prosecution for an illegal sexual act perpetrated upon a victim, including but not limited to prosecutions for violations of Sections 12—13 through 12—16 of the Criminal Code of 1961, expert testimony by a behavioral psychologist, psychiatrist or physician relating to any recognized and accepted form of post-traumatic stress syndrome shall be admissible as evidence." (Ill. Rev. Stat. 1987, ch. 38, par. 115—7.2.)

This legislation was added by Public Act 85—837, which became effective on January 1, 1988. We note that Public Act 85—837 contains other substantive changes to section 115—10 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1987, ch. 38, par. 115—10) and to section 12—13 of the Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, par. 12—13), which provide some insight into the legislative intent of section 115—7.2. In section 115—10, as indicated earlier in this opinion, the legislation significantly expanded the scope of admissible hearsay testimony of a child victim's out-of-court statements concerning sexual offenses. In section 12—13, the legislation provides for Class X sentencing in subsequent convictions of criminal sexual as-

sault.

The gist of the amendments to sections 115—10 and 12—13 is to liberalize the hearsay rule in prosecutions for sexual offenses against children and to permit more severe sentences for repeat offenders. Likewise, it is apparent that section 115—7.2 was enacted for the purpose of admitting in prosecutions for sexual offenses expert testimony that might otherwise be excluded on grounds of relevancy. Given the tenor of the legislation, it is our opinion that the legislature's list of professionals who may testify to post-traumatic stress syndrome was not intended to be an exclusive, but rather a generic, list of professionals who are qualified to give expert testimony as to a victim's psychological and physiological reactions to a sex offense. The decision whether to admit such testimony through witnesses not specifically enumerated by the statute remains within the sound discretion of the trial court. (We note that the provision was subsequently clarified by deleting the list of professionals and replacing it with "an expert qualified by the court." See Pub. Act 85—1279, amending section 115—7.2, eff. Jan. 1, 1989.)

■ In this case, the State introduced Klein's testimony to explain the minor victims' delayed and fragmented reports of the offenses. Although Klein's professional title is "psychotherapist" and she does not claim a doctorate degree, the record on appeal establishes that her expert qualifications in the area of child sexual abuse are legion. Her testimony was undeniably relevant on the issue of whether the children were victims of one or both of the men charged with the offenses. Under the circumstances, we find no abuse of the court's discretion in admitting Klein's expert testimony relating to post-traumatic stress syndrome.

■ Lastly, we address defendant's contentions that the jury's verdicts are contrary to the manifest weight of the evidence. Defendant first argues that the convictions must be reversed because the State failed to prove any specific date of the offenses. This contention is meritless. The exact date of the offenses was neither an element of the crimes charged, nor a factor in determining whether the prosecution was time barred. And, given defendant's alibi defense that he was never at Hill's trailer when the victims were there, defendant was not prejudiced by lack of proof of the precise date of the offenses. See *People v. Long* (1977), 55 Ill. App. 3d 764, 370 N.E.2d 1315.

■ Defendant also contends that the State failed to prove penetration or that any offense at all had occurred. We agree that there was insufficient proof of penetration. The hearsay evidence indicated

that Sara complained to Sharon Sims that defendant had "poked" her. At trial, Sara testified only that he had "touched" her in her "naughty place." Without more, neither statement would support a conviction based on penetration. (See Ill. Rev. Stat. 1987, ch. 38, par. 12—12(f)) (defining "penetration," *inter alia,* as an *"intrusion,* however slight, of any part of the body of one person *** *into* the sex organ *** of another person." (Emphasis added)).) Although Dr. Ozaki's testimony established that the vaginas of both girls may have been penetrated, there was no evidence that defendant had done so. The jury was left to speculate whether Fred Hill or defendant or both had penetrated the girls. Under the circumstances, we reverse defendant's conviction for the offense of aggravated criminal sexual assault and vacate his sentence of eight years for that offense.

The record on appeal supports the jury's verdict finding defendant guilty of the aggravated criminal sexual abuse of both victims. Clearly, the jury was not required to and in fact did not believe defendant's alibi defense. Accordingly, we remand this cause for reinstatement of defendant's conviction for aggravated criminal abuse of Sara (count IV) and for sentencing thereon. See *People v. Pecina* (1985), 132 Ill. App. 3d 962, 477 N.E.2d 820 (wherein this court reversed defendant's conviction of felony murder and remanded cause for reinstatement of jury verdicts on intentional murder charges which had been vacated by trial court solely for the purpose of avoiding multiple convictions for single murder).

The judgment of the circuit court is affirmed in part, reversed in part and remanded with directions.

*Affirmed in part; reversed in part and remanded.*

STOUDER, J., concurs.

JUSTICE HEIPLE, concurring in part and dissenting in part:

The defendant, Wayne Thomas Kelly, was charged with two counts of aggravated criminal sexual assault against five-year-old Amy Sims and her seven-year-old cousin, Sara Sims. Following a jury trial, the defendant was convicted of one count of aggravated criminal sexual assault against Sara and was convicted of aggravated criminal sexual abuse against both girls. I agree with the majority that the jury's verdict finding the defendant guilty of aggravated sexual abuse of both victims should be upheld. I do not agree, however, with that portion of the majority opinion which found that there was insufficient proof of penetration to support a conviction for the offense of

aggravated criminal sexual assault.

Sexual penetration is statutorily defined as "any intrusion, *however slight* \*\*\* of any \*\*\* object into the sex organ or anus of another." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 38, par. 12—12(f).) The question of whether penetration has occurred is one for the jury to determine after examining the evidence presented at trial. (*People v. Morgan* (1986), 149 Ill. App. 3d 733.) A reviewing court should not set aside a guilty verdict unless the evidence is so palpably contrary to the finding or so unreasonable, improbable, or unsatisfactory as to leave a reasonable doubt about the accused's guilt. *People v. Yates* (1983), 98 Ill. 2d 502.

In the instant case, Sharon Sims, Sara's aunt, testified that when she was giving Sara a bath she noticed that Sara's vaginal area was very red and raw. Sharon further testified that when she asked Sara how the defendant had hurt her, Sara responded "he had poked her with his finger too." Sara, with the aid of anatomically correct dolls, testified at trial that the defendant had touched her "naughty place" while she was lying down with her panties off and that it felt "bad." Dr. Ozaki then testified that the evidence supported a finding that Sara's vagina had been penetrated.

This testimony reveals that the jury verdict cannot be considered unreasonable or improbable. The jury could have concluded that if the defendant had "poked" Sara's vaginal area with his finger until it hurt that this would constitute penetration under the statute.

Nevertheless, the majority maintains that the testimony of Sharon was improper to the extent that it added the element of penetration which was not specifically testified to by Sara. Merely because Sara did not recite the magic words that defendant placed his fingers "into" her vagina, however, is no reason to discount Sharon's testimony. Section 115—10 (Ill. Rev. Stat. 1987, ch. 38, par. 115—10) provides in relevant part:

> "(a) In a prosecution for a sexual act perpetrated upon a child under the age of 13, including but not limited to prosecutions for violations of Sections 12—13 through 12—16 of the Criminal Code of 1961, the following evidence shall be admitted as an exception to the hearsay rule:
>
> \*\*\*
>
> (2) testimony of an *out of court statement made by such child describing* any complaint of such act or matter of *detail* pertaining to any act which is an element of an offense *which is the subject of a prosecution* for a sexual act perpetrated upon a child." (Emphasis added.)

54

The statute simply does not state that the child must first specifically testify in court to the element of penetration before Sharon can be allowed to testify to Sara's out-of-court statement which referred to the defendant "poking" Sara's vagina. Sara's statement to Sharon described a detail of the defendant's sexual misconduct which related to the element of penetration. Thus, Sharon's testimony was proper under the statute. Consequently, I would uphold the jury verdict in its entirety and affirm the defendant's conviction for the offense of aggravated criminal sexual assault.