THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ERIKA SMITH, a/k/a Erica Smith, Defendant-Appellant.

First District (5th Division)   No. 1—90—1349

Opinion filed July 17, 1992.

Randy W. Franklin, of Park Ridge, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Howard D. Weisman and Christine Cook, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LORENZ delivered the opinion of the court:

After a bench trial, defendant, Erica Smith, was found guilty on two counts of aggravated criminal sexual abuse of her minor son. Defendant was sentenced to 30 months' probation and restitution in an indefinite amount. Defendant filed this appeal. We consider: (1) whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found defendant guilty beyond a reasonable doubt; (2) whether the testimony of a licensed psychologist who examined the victim exceeded the corroborative complaint exception under section 115—10 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 115—10); and (3) whether the trial court erred allowing the licensed psychologist to express an opinion on an ultimate issue.

We affirm.

The victim in this case, R.B., is the child of Erica Smith (defendant). When defendant and R.B.'s father were divorced in 1985, R.B. lived with his father and paternal grandparents. Pursuant to the divorce decree, defendant had visitation rights with R.B. for three weekends a month and for a six-week period in June and July every year; typically, however, defendant visited R.B. only on Sundays.

In 1987 defendant became employed as a massage therapist. During her visits with R.B., defendant began giving R.B. massages. Eventually, defendant was charged by indictment with two counts of aggravated criminal sexual abuse; specifically, defendant was alleged to have rubbed R.B.'s penis and testicles during massages given between August 8, 1988, and August 8, 1989.

R.B. was nine years old at the time of trial. He testified to all of the following. R.B. knew that defendant had been a massage therapist for over two years. R.B. visited defendant about 20 to 30 times be-

tween August of 1988 and August of 1989. During that time defendant gave R.B. massages which R.B. described: "she would rub my arms and then she would rub my chest, and then she would rub my penis for 15 seconds; and then she would rub my testicles and then she would rub my legs and then she would turn me over." When asked if defendant gave him massages every visit, R.B. testified "one week she would give me one, then she'd skip a week." Sometimes defendant removed R.B.'s underwear. R.B. got an erection when defendant rubbed his penis but he did not ejaculate. Sometimes other family members were in defendant's house during these massages, but they were not in the same room.

Before September of 1989 R.B. never told anyone about defendant fondling his penis and testicles because he was afraid of defendant. R.B. testified that defendant swore at him, threatened to hurt him, and even punched him in the chest and kicked him in the legs. In September of 1989 R.B. told his father about defendant punching and kicking him. His father took him to see a licensed psychologist, Dr. Murray. His father told him to tell Dr. Murray everything. His father attended the interviews but allowed Dr. Murray to talk to R.B. individually for 15 to 20 minutes. R.B. did not know the words "penis" and "testicles" until Dr. Murray used them at the interviews. R.B. believed he could tell Dr. Murray about the massages because Dr. Murray was a psychologist. R.B. knew that the defendant's touchings were "bad." R.B. went with his mother on a vacation in July of 1989 during which time his mother did not touch his penis or testicles. R.B. testified that his father talked to him a lot about a pending custody battle but the interviews with Dr. Murray were not conducted for that reason.

Dr. Murray testified on behalf of the prosecution. He stated for the record that he had a master's degree, a doctorate in clinical psychology, and extensive experience treating children who had been physically or sexually abused. Dr. Murray first interviewed R.B. on September 9, 1989. R.B.'s father had indicated to him that R.B. was afraid of defendant. Dr. Murray first determined that R.B. could differentiate between the truth and a lie. Dr. Murray then testified that R.B. told him that he was afraid of defendant; that defendant swore at him and hit him; and that sometimes his stepbrother would tease him. Dr. Murray asked R.B. if anyone had touched him inappropriately. R.B. answered, "well," paused for several moments, and then began to describe again how his stepbrother teased him.

Dr. Murray then asked R.B. about defendant's job. R.B. responded that defendant was a massage therapist. R.B. stated that

defendant had given him massages. R.B. did not like the massages but felt he had to comply because he was afraid defendant would become angry. Dr. Murray explained to R.B. the terms "penis" and "testicles" and asked if defendant had touched his penis and testicles during the massages. This time R.B. answered yes. Dr. Murray explained the terms "erection" and "ejaculation"; R.B. stated that he got erections during the massages but he did not ejaculate. Dr. Murray testified that during the interview R.B. was very upset, hesitant in verbal responses, avoided eye contact, held his body in rigid positions and looked at the ground. Dr. Murray attributed this to great stress resulting from the sexual abuse but admitted on cross-examination that sometimes children act similarly when lying.

Dr. Murray told R.B.'s father about the interview. Dr. Murray also notified the Illinois Department of Children and Family Services and suggested a second interview. Dr. Murray notified Tim Murphy, the father's attorney for the custody matters, but Dr. Murray stated he was unaware that defendant had filed for greater visitation rights.

The prosecution rested after Dr. Murray's testimony.

The defense began its case with an offer of proof regarding Dr. Brown, a licensed psychologist, providing that Dr. Brown suggested to defendant that R.B. receive counseling but that defendant could not obtain the cooperation of R.B.'s father.

Anthony Sanmarco, an attorney representing defendant in the custody proceedings, testified that he wrote R.B.'s father a letter requesting that defendant be allowed to take R.B. on vacation in July of 1989. The father agreed. Sanmarco also filed a petition to modify the visitation agreement because defendant felt she was unable to exercise her visitation rights fully due to R.B.'s busy schedule on the weekends.

Defendant's mother, Geraldine Smith, testified that she saw R.B. about once a week between August 1988 and August 1989. Geraldine denied having any knowledge that R.B. had been physically abused and stated that R.B. never complained to her about defendant fondling his penis and testicles. She recalled one Sunday when defendant gave R.B. a massage in the upstairs of her house. However, all of the family members also received massages that day. Geraldine was in and out of the room when R.B. received his massage and she did not see defendant fondle his penis or testicles.

Craig Quaglia, defendant's live-in boyfriend and business partner, testified that he was often present during R.B.'s visits. During one visit R.B. complained of a sore shoulder, so he and defendant decided that a massage would help the sore shoulder.

Emile Smith, defendant's brother, testified that he and R.B. received massages one day at Geraldine Smith's house. Later that day, he and R.B. went for a bike ride and R.B. did not complain about the massage.

Defendant testified that she worked as a massage therapist specializing in sports injuries. She gave all of her children massages. R.B.'s first massage occurred at her parents house on a Sunday in April 1989. Family members came in and out of the room during the massage. She categorically denied that she touched R.B.'s penis or testicles. She gave R.B. a second massage in her own living room because R.B. had complained of a sore arm. Craig Quaglia was present for this massage. Defendant admitted that she occasionally slapped R.B. across the face when he was disobedient but denied that she swore directly at him. Defendant took R.B. on vacation in July 1989 and R.B. did not complain. Defendant was aware, however, that R.B. sometimes did not want to see her and that R.B. did not want her "overnight-time" with him to be increased.

The trial court, after listening to closing arguments, concluded:

> "Well, I've listened closely to all the testimony of the last two days of the witnesses. I've observed the witnesses here. It is a tragedy what is happening in this case; a tragedy among the families. I don't know why some of the things that were done were done, but I believe that the young lady here, Erica, did fondle her son illegally and I do believe its [sic] a crime. So there will be a finding of guilty."

Defendant was sentenced to 30 months' felony probation. Defendant was also ordered to continue with counseling for herself and to pay for psychiatric counseling for R.B. Defendant filed this appeal.

OPINION

Defendant has challenged the sufficiency of the evidence upon which she was convicted. Our standard of review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found defendant guilty beyond a reasonable doubt. *People v. Schott* (1991), 145 Ill. 2d 188, 582 N.E.2d 690; *People v. Roy* (1990), 201 Ill. App. 3d 166, 558 N.E.2d 1208.

Defendant challenges various aspects of the evidence. For example, prior to visiting Dr. Murray, R.B. never complained to anyone about the sexual touching and the other people present in the house when the massages took place had no knowledge of any sexual touching. In sum, defendant argues that Dr. Murray was retained to prepare evidence for the custody battle in court and that Dr. Murray sug-

gested to R.B. the allegations of sexual touching. Alternatively, defendant argues that even if defendant did touch R.B.'s penis there is no evidence that the touching was done for the purpose of "sexual gratification or arousal of the victim," a required element under the definition of sexual conduct. (Ill. Rev. Stat. 1985, ch. 38, par. 12—12(e).) Defendant suggests that the touching, if any, occurred by accident, negligence, or for a proper purpose. *People v. Bartay* (1986), 150 Ill. App. 3d 130, 501 N.E.2d 364.

We are not persuaded by these arguments. The evidence when viewed in the light most favorable to the prosecution establishes the following: (1) R.B., the nine-year-old victim, lived with his father; (2) R.B. testified that the defendant, R.B.'s mother, rubbed his penis and testicles; (3) R.B. testified that defendant threatened him not to tell anyone; (4) although R.B. did not tell his father about the sexual abuse, he did tell his father that defendant physically abused him; (5) his father arranged the interview with Dr. Murray and R.B. told Dr. Murray about the sexual abuse; and (6) Dr. Murray testified that he believed that R.B. told him the truth.

The trial court heard all of this evidence as well as the evidence in defendant's case. The trial court made a credibility determination based on the evidence and then concluded: "I believe that the young lady here, Erica, did fondle her son illegally." We note that particularly in a bench trial, it is the function of the trial court to determine the credibility of the witnesses, the weight to be given their testimony and the inferences to be drawn from the evidence. *People v. Westfield* (1990), 207 Ill. App. 3d 772, 566 N.E.2d 392.

Nor are we persuaded by defendant's alternative argument. Defendant categorically denied that she touched R.B.'s penis; she did not concede that she touched R.B.'s penis and then attempt to explain that the touching was accidental. Furthermore, the intent to sexually gratify or arouse may be inferred from circumstantial evidence. (*People v. Balle* (1992), 234 Ill. App. 3d 804.) Here, there was evidence that defendant sometimes removed R.B.'s underwear; the massages gave R.B. an erection; and R.B. testified that he knew that the touchings were "bad." We believe that these facts provided a sufficient basis for the trial court to determine that defendant's conduct was illegal, not accidental.

Therefore, we hold that the evidence when viewed in the light most favorable to the prosecution was sufficient to allow any rational trier of fact to determine that defendant was guilty beyond a reasonable doubt.

■ We next address whether the testimony of Dr. Murray exceeded the corroborative complaint hearsay exception under section 115—10 (Ill. Rev. Stat. 1989, ch. 38, par. 115—10), which states:

"(a) In a prosecution for a sexual act perpetrated upon a child under the age of 13, including but not limited to prosecutions for violations of Sections 12—13 through 12—16 of the Criminal Code of 1961, the following evidence may be admitted as an exception to the hearsay rule:

(1) testimony by such child of an out of court statement made by such child that he or she complained of such act to another; and

(2) testimony of an out of court statement made by such child describing any complaint of such act or matter or detail pertaining to any act which is an element of an offense which is the subject of a prosecution for a sexual act perpetrated upon a child.

(b) Such testimony shall only be admitted if:

(1) The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and

(2) The child either:

(A) Testifies at the proceedings; or

(B) Is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement.

(c) If a statement is admitted pursuant to this Section, the court shall instruct the jury that it is for the jury to determine the weight and credibility to be given the statement and that, in making the determination, it shall consider the age and maturity of the child, the nature of the statement, the circumstances under which the statement was made, and any other relevant factor.

(d) The proponent of the statement shall give the adverse party reasonable notice of his intention to offer the statement and the particulars of the statement." (Ill. Rev. Stat. 1989, ch. 38, par. 115—10, as amended by Pub. Act 85—837, eff. Jan. 1, 1988.)

We find that no error resulted due to the scope of Dr. Murray's testimony. Pursuant to the 1988 amendment, section 115—10 permits hearsay testimony concerning details of sexual acts perpetrated upon a minor victim *beyond* the mere fact that a complaint was made. (*People v. Kelly* (1989), 185 Ill. App. 3d 43, 540 N.E.2d 1125.) Furthermore, courts have held that detail testimony by a witness will be

harmless or merely cumulative when, as here, the victim has already testified and was subject to cross-examination. (*People v. Morton* (1989), 188 Ill. App. 3d 95, 543 N.E.2d 1366.) Therefore, defendant is not entitled to a new trial pursuant to section 115—10.

Next, we address whether the trial court erred by allowing Dr. Murray to render an opinion on an ultimate issue—that R.B. told the truth about defendant's conduct. Defendant complains that Dr. Murray was never formally qualified as an expert by the court and, regardless, his opinion that R.B. told the truth was outside the area of his expertise and unfairly invaded the fact-finding role of the trier of fact. We are not persuaded. Dr. Murray's credentials as an expert were clearly reflected in the record. Furthermore, we believe that his opinion as to whether R.B. was telling the truth was within the area of his expertise as a child psychologist. Also, because the trier of fact was the court and not a jury, there was little or no chance that his opinion was overly invasive. Finally, we note that Dr. Murray was a treating physician and his testimony should not have come as a surprise to defendant. *Cochran v. Great Atlantic & Pacific Tea Co.* (1990), 203 Ill. App. 3d 935, 561 N.E.2d 229.

Affirmed.

McNULTY, P.J., and MURRAY, J., concur.