THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PERRY V. FOWLER, Defendant-Appellant.

First District (6th Division)   No. 1—91—2424

Opinion filed December 30, 1992.

Anthony Pinelli, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Donald T. Lyman, and Joelle Marasco, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNAMARA delivered the opinion of the court:

Following a jury trial, defendant, Perry V. Fowler, was convicted of aggravated criminal sexual assault (Ill. Rev. Stat. 1989, ch. 38, par. 12—14(b)(1)), of Jessica K., age seven, and was sentenced to a term of 10 years. Defendant raises the following issues on appeal: (1) whether the State failed to prove him guilty beyond a reasonable doubt; (2) the testimony of the victim's mother and two other witnesses should not have been admissible; (3) the trial court's actions during jury delibera-

tions denied defendant a fair trial; (4) improper prosecutorial comments during closing arguments; (5) ineffective assistance of counsel; and (6) that the sentence was excessive.

The facts are as follows. In spring 1989, defendant, age 32, and his former wife lived in an apartment complex located in Palos Hills, Illinois. The victim, together with her mother, father, and brothers, lived in the same apartment complex as defendant and his wife. Defendant and his wife were friends of the victim's parents, and for a period of time, defendant and the victim's father worked at the same company.

During the summer of 1989, the victim's parents separated. The mother relocated in Michigan with the victim and her brothers. On November 30, 1989, the mother had a conversation with her boyfriend about purchasing airline tickets for the children to visit their father during Christmas vacation. The victim and her brother, Brandon (age 11), approached their mother. Brandon told his sister to "tell Mom or I'm going to." The victim told her mother that she did not want to visit her father because defendant was going to be there. She further related that defendant touched her "in private places" and made her do things that she never wanted to happen again.

Prior to trial, the court conducted a hearing outside the presence of the jury pursuant to section 115—10 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 115—10), and found the victim, age nine at that time, to be a competent witness. The judge also heard the testimony of the victim's mother, Detective Henke of the Michigan State Police Department, and Mary Martone of LaRabida Hospital. The judge determined that the statements of the victim, in conjunction with the corroborating witnesses, were sufficiently reliable to permit the outcry testimony of these witnesses in accordance with section 115—10.

The victim testified at trial that she lived in Michigan with her mother, aunt, brothers and cousins. She previously lived in Palos Hills. When she was approximately six or seven years old, she slept overnight at the apartment of defendant and his former wife, Diane Fowler, approximately five or six times. Defendant and his wife took her to the carnival, and afterwards she slept overnight on the couch in her nightgown and underwear. Defendant went to sleep in a back bedroom.

Defendant woke the victim up by feeling her vagina, which she referred to as her "private parts," and he also inserted his finger into her vagina. The victim's underwear was pulled down around her knees. Defendant asked the victim whether it felt good when he

stroked her vaginal area, to which she replied "no." When defendant finished, he told the victim to remember that it was "our secret."

The victim stayed overnight at defendant's apartment on six or seven other occasions when he touched her in a similar manner. During one such incident defendant "licked" her genital area. The victim also testified that defendant placed her hand on his penis.

Defendant refrained from touching the victim when other children were overnight guests. However, on two occasions when Brandon, age nine at that time, also stayed overnight, defendant approached her during the night and felt her vaginal area with his hand and inserted his finger into her vagina. Brandon remained asleep during the incident. Defendant then returned to his own bed to sleep with his wife.

On cross-examination, the victim stated that defendant's wife was asleep in the bedroom when the sexual incidents occurred. The victim did not wake her brother up at the time because she was afraid that he would make fun of her; however, she did tell Brandon about this incident at a later date. The victim also told her best friend, Nichole, that defendant touched her in her "privates" and that it hurt, but Nichole laughed at her and told her that she was lying. The victim returned to defendant's apartment after the first time he touched her because he said that he would take her to the carnival. Thereafter she returned to defendant's apartment because he promised to take her out for pizza. The victim last saw defendant in June.

The victim's mother testified that she and her husband met the defendant and his wife through mutual friends. Defendant had volunteered to take her daughter to carnivals, parks, the pool, and she had also spent the night at his apartment on an average of once or twice per month. The victim's mother continued the friendship with defendant and his wife after moving to Michigan in July 1989. Upon learning of her daughter's allegation of sexual misconduct performed by defendant, she contacted the Michigan State Police Department and set up a meeting for the victim to speak to Detective Henke on December 4, 1989. On December 15, 1989, the victim was examined at LaRabida Hospital by Mary Martone, assistant director of behavior science, and Dr. Lantos, a pediatrician.

On cross-examination, the victim's mother stated that her daughter saw defendant in October 1989 at her husband's apartment in Illinois. The victim "wanted nothing to do with [the defendant]." The mother of the victim's friend Nichole had told her to "watch [defendant] because he was a pervert" in the spring of 1989. However, she found nothing in her daughter's actions to support the insinuations.

She continued to allow the victim to go over to defendant's apartment, provided that defendant's wife was present.

Officer Henke testified that he had worked as a trooper for the past 20 years, and that for the past 11½ years, he had dealt with physical and emotional child abuse. The State questioned Henke about his educational background and the training schools he attended in the field of child sexual abuse and investigation. In addition, Henke taught sexual abuse training courses at various police academies and also received several commendations for his investigatory skills.

On December 4, 1989, Henke conducted an interview of the victim. After preliminary conversation, the victim told Henke that she had come to the post that day because defendant had touched her in "private places." The victim told Henke that the incidents had occurred at defendant's apartment when she was six years old. The victim stated that the first incident occurred when she awoke to find defendant lying behind her on the couch. When she awoke she found that her underpants were around her knees, that her legs were slightly apart, and defendant had reached over on top of her and was touching her vaginal area. After a period of time, defendant also placed his finger inside her vagina. The victim felt pain when defendant inserted his finger into her vagina. Defendant made a circular motion with his finger and moved it up and down while his finger was inside of her. The victim asked if she could get up from the couch after a period of time. Prior to the time that defendant left the living room, he told her that the incident was "their secret" and not to tell anyone. A similar incident occurred when the victim spent the night approximately two weeks later. In total, defendant touched her private area approximately five or six times.

The victim told Henke that on the last time she spent the night, she stayed up later than defendant watching television. She turned off the television and fell asleep on the couch. When she awoke, she found the defendant lying behind her and that he was naked. Defendant again reached over her and touched her vaginal area, and eventually placed his finger inside of her vagina. After a period of time, defendant rolled the victim over onto her back. He then took her hand and placed it on his penis while he was feeling between her legs. The victim removed her hand, but defendant took her hand and placed it back on his penis a second time. Defendant then licked her vagina. Prior to leaving the room, defendant reminded the victim that it was their secret, and not to tell anybody. During this last incident, the victim's brother was asleep on a small couch in the living room.

When the victim saw defendant on subsequent occasions, he would lean down and whisper into her ear to remember their secret. The victim spoke of the incident with her friend, Nichole, in an attempt to warn her that if she stayed overnight at defendant's apartment, the same thing could happen to her. The victim also related the incident to her brother.

Mary Martone, assistant director of behavior sciences and social worker for LaRabida Children's Hospital, also testified for the State. Similar to Henke, Martone initially testified that she had extensive training and experience in the area of child sexual abuse. Martone testified that she spoke with the victim in a child interview room on December 15, 1989. After a number of preliminary questions, including questions designed to ascertain whether the victim understood the difference between the truth and a lie, the victim told Martone that she was at LaRabida because defendant had touched her in "private areas." The victim repeated her previous account that the purported incidents occurred in spring 1989 at defendant's apartment when she stayed overnight. In response to the State's inquiry as to why the victim waited so long to tell her about the incidents, Martone testified that the victim did not tell her mother about the incident immediately after it occurred because she was afraid she would get into trouble and receive a spanking by her mother. Martone indicated that such fear is typical of child sexual abuse victims, particularly of girls who are the same age as the victim, who commonly feel that whatever is happening is their fault.

Following the direct examination of the victim's mother, Henke and Martone, the trial judge instructed the jury that it was within the jury's province to determine whether the statements were in fact made by the victim, and the weight to be accorded to them. In making this determination, the jury was instructed to consider the age and maturity of the victim, the nature of the statements, the circumstances under which the statements were made, and any other relevant factors.

Detective Sergeant William Ward of the Palos police department effectuated the arrest of defendant and advised him of his *Miranda* rights. Defendant stated that the victim had stayed overnight at his apartment on numerous occasions and that he slept immediately behind the victim on the couch. Defendant told the officers that he volunteered to watch his friend's children because he loved children.

Dr. John Lantos, a pediatrician at LaRabida Children's Hospital and an expert in the field of sexual abuse, testified that he conducted a physical examination of the victim on December 15, 1989. Dr. Lan-

tos found that the victim's external genitals were normal. The victim's hymenal opening was enlarged from four millimeters to eight millimeters, which he considered unusual for a six-year-old girl. Additionally, the victim had some scarring and the edge of her hymen was thickened on the right side. Dr. Lantos opined that his findings were consistent with digital penetration.

On cross-examination, Dr. Lantos stated that some girls are born with an enlarged hymenal opening, and repeated vaginal inspections and hymenal penetration may also cause an enlarged hymenal opening. Dr. Lantos could not determine with "100% certainty" which factor caused hymenal enlargement in the victim's case. He further stated that it was not possible to determine the exact time an injury occurs unless an examination of the victim is conducted shortly thereafter.

On redirect examination, Dr. Lantos testified that he was unaware that a hymenal injury such as that present in the victim could be caused by self-penetration. Based upon his examination, Dr. Lantos believed that the injury was caused by digital penetration.

Rory Arenz testified on behalf of defendant that he visited defendant at his apartment complex on the weekend of July 4, 1989. He observed that the relationship between defendant and the victim was friendly and did not appear any different from interactions on previous occasions. Arenz was also present in October 1989 when the victim's family visited defendant at his apartment. He stated that the victim was drawing pictures for defendant so he would have something to remember them by when they left for Michigan. When the victim left the apartment, she kissed defendant good-bye.

Roseanne Fowler, defendant's current wife, stated that she had two children by defendant. The day after the victim's October visit, she noticed colored pictures signed by the victim on his refrigerator.

Diane Floener, defendant's former wife, testified that she and defendant hosted sleep parties at their house for children in the neighborhood. Floener stated that the victim stayed overnight at their apartment on at least four occasions, but that the overnight visits stopped after she hurt her leg on June 3, 1989. Defendant and Floener slept in their bedroom on a queen-sized waterbed; thus, when someone entered or left the bed it would cause waves. Defendant slept against the wall, which required him to climb over her to get in and out of the bed. Floener did not remember if defendant woke her up by climbing into the water bed; however, as far as she could recall, defendant never got in and out of bed on any of the nights that the victim stayed overnight.

Floener saw the victim and defendant in October 1989, at which time she hugged and kissed the defendant and colored pictures for him. The victim never complained to Floener of mistreatment by defendant.

Defendant testified that he hosted sleep parties for groups of neighborhood children because he and his former wife were fairly certain that they could not have children. According to defendant, the victim spent the night alone at his apartment on two occasions, and twice accompanied by her brother. Defendant took the victim to a carnival with Floener and his sister, and afterwards the victim stayed overnight for the first time. Defendant denied ever touching the victim in any sexual manner.

The jury began deliberations at 2:30 p.m. on May 31, 1991. At 4:20 p.m., the jury submitted the following query in writing: "What was Dr. Lantos's answer about defense attorney's question about damage to hymen?" Upon receiving the communication from the jury, the judge spoke with both the defense attorney and the prosecutor who were at the same telephone. Both counsel agreed with the judge's intention to inform the jury that it had already heard all of the evidence in this case and should therefore continue its deliberations. The court indicated that it would make an official record when the attorneys returned to the courtroom.

At 6:55 p.m., the jury informed the trial judge that it was unable to arrive at a unanimous decision. Again, at 9:40 p.m., the jury sent the judge a note that it was still deadlocked. The judge's response to both notes was to inform the jury to continue its deliberations.

At 11 p.m. on May 31, 1991, the jury was sequestered. The following morning, the jury found defendant guilty.

█ We initially consider defendant's contention that he was denied a fair trial because the testimony of the victim's mother, Henke and Martone concerning out-of-court statements made by the victim should not have been admissible pursuant to section 115—10 (Ill. Rev. Stat. 1989, ch. 38, par. 115—10). That section provides in relevant part:

"§115—10. (a) In a prosecution for a sexual act perpetrated upon a child under the age of 13, including but not limited to prosecutions for violations of Sections 12—13 through 12—16 of the Criminal Code of 1961, the following evidence shall be admitted as an exception to the hearsay rule:

(1) testimony by such child of an out of court statement made by such child that he or she complained of such act to another; and

(2) testimony of an out of court statement made by such child describing any complaint of such act or matter or detail pertaining to any act which is an element of an offense which is the subject of a prosecution for a sexual act perpetrated upon a child.

(b) Such testimony shall only be admitted if:

(1) The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and

(2) The child either:

(A) Testifies at the proceeding; or

(B) Is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement." Ill. Rev. Stat. 1989, ch. 38, par. 115—10.

■ Defendant first asserts that the trial court should not have permitted the victim's mother to testify as a witness pursuant to the above section. He maintains that the victim's statement to her mother, made six months after the occurrence of the alleged incidents, does not qualify as an outcry exception in view of the fact that the victim only admitted that defendant had perpetrated the assault after her brother prompted her to make the statement to her mother. We find, however, that the trial court properly permitted the testimony of the victim's mother. In *People v. Kelly* (1989), 185 Ill. App. 3d 43, 540 N.E.2d 1125, this court discounted such an argument, reasoning that, " '[i]n the absence of a statutory requirement [that] there be no unexplained delay, *** it was the intent of the legislature that any evidence of delay in making the complaint will affect the weight, rather than the admissibility, of the evidence.' " (*People v. Kelly*, 185 Ill. App. 3d at 49, 540 N.E.2d at 1129, quoting *People v. Bailey* (1988), 177 Ill. App. 3d 679, 683, 532 N.E.2d 587, 590.) Additionally, the court held that reasoning applicable in spite of the fact that the victim's statements were in part elicited by questioning. Accordingly, we find that the trial court properly admitted the testimony of the victim's mother in accordance with section 115—10(b)(1).

■ We find, however, that the trial court erred in admitting into evidence portions of Martone's and Henke's testimony under the rubric of section 115—10(b)(1). While that section creates an exception to the hearsay rule, it does not abrogate the rule or remove its effect other than in the area of the exception. The plain language of the statute limits the exception to complaints of, or details about, sexual acts which are the subject of a prosecution. *People v. Anderson* (1992), 225 Ill. App. 3d 636, 587 N.E.2d 1050.

In the present case, Martone was allowed to testify that the victim did not tell her mother about the incident for six months after it occurred because she was afraid that she would get into trouble. Martone was also permitted to state that such fear is typical of child sexual abuse victims, particularly of girls who are the same age as the victim, who commonly feel that whatever is happening is their fault. Martone's testimony concerning a possible rationale for why the victim may have withheld information about defendant's assaults upon her was improper and far beyond the contemplation of section 115—10. Martone was called by the State as an outcry witness and her testimony should have been limited to the details of the incident given her by the victim.

Moreover, Henke testified not only about what the victim had told him about the incidents in question. He also testified about physical gestures she made during the interview so that he was able to describe the acts with details not provided by the victim. We find that this portion of Henke's testimony was improper and prejudicial.

The State responds to defendant's claims on this issue by stating that defendant's failure to object during trial results in waiver upon review. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) However, the doctrine of plain error may be invoked in criminal cases where the evidence is closely balanced or where the error is of such magnitude that defendant was denied a fair trial. *People v. Cox* (1990), 197 Ill. App. 3d 1028, 557 N.E.2d 288.

We conclude that the cumulative effect of the foregoing improper portions of the testimony of Henke and Martone effectively deprived defendant of a fair trial. We therefore reverse the conviction and remand the cause for a new trial.

■ In light of our holding, it is necessary to comment on defendant's assertion that he was not proved guilty of aggravated criminal sexual assault beyond a reasonable doubt. See *People v. Randle* (1991), 213 Ill. App. 3d 1082, 572 N.E.2d 1207.

In the present case, the victim slept overnight at defendant's apartment on several occasions in the company of other children, as well as by herself. Her testimony about the crime was clear and convincing. Upon learning that her mother intended her and her brother to visit their father in Illinois, the victim told her mother that she did not want to visit her father because defendant would be there; that he had touched her in private places and made her do things that she never wanted to do again. Additionally, the victim told both Henke and Martone that defendant had touched her vaginal area. The evi-

452

dence was sufficient to prove defendant's guilt beyond a reasonable doubt.

In view of our remand, we need not address the other issues raised by defendant on appeal. However, we note that the comment made by the prosecutor in rebuttal closing argument, "[t]his case isn't about reasonable doubt," was highly improper and should not be repeated in the new trial.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

EGAN, P.J., and RAKOWSKI, J., concur.