■ In the Matter of SHEIKARA G., a Child Alleged to be Abused. MYRON J., Appellant.—Final order of disposition of the Family Court, Bronx County (Marjory D. Fields, J.), entered on or about July 2, 1987, which discharged the subject child to her mother under supervision for 18 months and barred the father from seeing the child without a prior court order, upon a finding, after a hearing, that the father had sexually abused the child and had allowed her to be sexually abused by others, unanimously affirmed, without costs.

The testimony of nurse Leah Harrison offered adequate corroboration of the child's unsworn out-of-court statements that she had been sexually abused. (Family Ct Act § 1046 [a]

[vi].) Ms. Harrison, a certified nurse practitioner specializing in abused and neglected children, with a Masters of Science degree in pediatrics, had extensive experience in examining children alleged to be sexually abused and had taught on the subject of child abuse at Albert Einstein College of Medicine. She testified as both a validating witness, based on two interviews with the four-year-old child, and as a medical expert, offering very strong evidence corroborating the allegations of sexual abuse, including scarring of the hymenal ring. *(See, Matter of Kimberly K.,* 123 AD2d 865.) The admission into evidence of a report of a doctor, who did not find medical evidence of abuse upon his examination (though he did find strong behavioral indications of abuse), did not undermine Harrison's findings. Since the doctor did not testify, it was impossible to ascertain the extent of his physical examination.

Moreover, unlike the fact of abuse, a child's identification of her abuser does not require specific corroboration, as long as the circumstances as a whole confirm the child's credibility. *(Matter of Nicole V.,* 123 AD2d 97, 105, *affd* 71 NY2d 112.) The child's out-of-court statement that "daddy" participated in some of the acts committed against her was sufficient evidence that her father was a participant. There was no evidence that she ever called her mother's boyfriend "daddy", rather than "Daddy Chris". Moreover, all of her statements concerning the abuse indicated that they occurred when she was visiting her father's home. Furthermore, as the court noted, its finding could be founded on either the father's direct abuse or his knowing failure to protect the child from the abuse of his family members *(see,* Family Ct Act § 1012 [e] [iii]), and the court clearly found that both had occurred. Its finding that the father knew of the abuse committed by his brother was based not only on the court's documented observation of the father's hesitancy in answering questions concerning this area, but on the fact that the father's denial that he knew that five other children had been removed from his home on a finding of sexual abuse by his brother was clearly incredible.

Finally, given the facts of this case, the court's final order of protection, which barred the father from visitation without a court order, was not overly harsh. Concur—Kupferman, J. P., Milonas, Ellerin, Wallach and Rubin, JJ.