Matter of Elina M. (Leonard M.) (2024 NY Slip Op 06574)

Matter of Elina M. (Leonard M.)

2024 NY Slip Op 06574

Decided on December 24, 2024

Appellate Division, Second Department

Voutsinas, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on December 24, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

FRANCESCA E. CONNOLLY, J.P.
ROBERT J. MILLER
BARRY E. WARHIT
HELEN VOUTSINAS, JJ.

2023-06556
 (Docket No. N-5639-21)

[*1]In the Matter of Elina M. (Anonymous). Administration for Children's Services, respondent; Leonard M. (Anonymous), appellant.

APPEAL by the father, in a proceeding pursuant to Family Court Act article 10, from an order of disposition of the Family Court, Kings County (Ilana Gruebel, J.), dated June 27, 2023, and entered in Kings County. The order of disposition, upon an order of fact-finding of the same court dated May 5, 2023, made after a fact-finding hearing, finding that the father neglected the subject child, and after a dispositional hearing, inter alia, released the subject child to the custody of the nonrespondent mother under the petitioner's supervision.

Brooklyn Defender Services, Brooklyn, NY (Kathryn V. Lissy and Aubrey Austin Rose of counsel), for appellant.
Muriel Goode-Trufant, Corporation Counsel, New York, NY (Devin Slack, Chloé K. Moon, and Eva Jerome of counsel), for respondent.
Martha Schneiderman, Brooklyn, NY, attorney for the child.

VOUTSINAS, J.

OPINION & ORDER
This appeal concerns a finding of neglect against a parent in a proceeding pursuant to Family Court Act article 10, based upon an alleged incident of excessive corporal punishment. This appeal does not present us with an opportunity to resolve a novel legal question. It does, however, provide us with an opportunity to provide some guidance with regard to when a single incident of excessive corporal punishment may be sufficient to support a finding of neglect. This appeal also presents us with the opportunity to emphasize that a finding of neglect must be based on evidence establishing the allegations set forth in the petition before the court. Absent additional allegations set forth in an amended petition that conforms to the proof with notice to the respondent, the court must not base a finding of neglect on allegations not set forth in the petition.
I. Factual and Procedural Background
The appellant, Leonard M. (hereinafter the father), is the father of Elina M., born in 2012, who is the subject of this proceeding. The child's mother, Diana R., and the father separated when the child was less than one year old. The parents were engaged in a custody battle over the child for many years. Eventually, the parents had joint legal custody of the child, and each parent had equal parental access with the child that was split between the parent's homes.
In June 2021, the petitioner, Administration for Children's Services (hereinafter ACS), filed a petition pursuant to Family Court Act article 10 against the father, alleging that he had neglected the child by inflicting excessive corporal punishment on her. The petition alleged, more specifically, that on or about June 7, 2021, the father had grabbed the child's arm and squeezed it "really, really hard," leaving "three circular, dark green marks" on the child's shoulder, which [*2]"appeared to be the size of finger prints." The petition did not contain any allegations that the father had engaged in any other acts of aggression toward the child or regarding any misuse of alcohol.
A fact-finding hearing commenced in February 2022. ACS called two witnesses: an ACS caseworker and the child's mother. The ACS caseworker testified that while visiting the child on June 10, 2021, she noticed a bruise on her arm. When the ACS caseworker asked the child about the bruise, the child reported that while she was at the father's home a day or two days earlier, he became aggressive when she attempted to walk away from him while he was speaking, and he "pulled her rough, tightly, and forced her" to sit on a sofa. The child also had reported to the ACS caseworker that she believed that the father had been drinking alcohol because he was "walking funny." The child indicated that her next visit with the father would be the following day and that she felt safe continuing to visit with him. The ACS caseworker also testified that she had biweekly meetings with the child since April 2021, and that the child had not previously reported any excessive corporal punishment, but the child had previously reported that the father "often drank and . . . behaved oddly."
The mother testified that after the child returned from a visit with her father on June 10, 2021, she had observed a line of "four or five bruises" on the child's arm. The mother asked the child about the bruises, and the child stated that she was sitting in the living room watching a movie on her laptop and that the father was arguing with someone on the phone. The mother testified that the child told her that the father then threw the phone, took the laptop, threw the laptop on the floor, grabbed the child "hardly," screamed at her, "this is my apartment, this is my rules," and then took the child into another room.
On the July 19, 2022 hearing date, the mother was questioned by ACS counsel as to whether the subject incident was the first one that the child had reported in which the father had become angry and grabbed her. The father's counsel objected to the question as leading, and the Family Court asked if "it [is] in the petition." ACS counsel argued that petitions are pleaded generally. The court advised ACS counsel that the petition required allegations of specific facts and that if ACS wanted to conform the pleadings to the proof to add allegations other than the subject incident, the petition would have to be amended. ACS counsel stated that she intended to amend the petition, and the court ordered that conformed pleadings were to be submitted with notice to all counsel by July 21, 2022, at 5:00 p.m.
On the next hearing date, August 4, 2022, the Family Court stated that it had not received any conformed pleadings and asked ACS counsel whether she had served conformed pleadings by the deadline that the court had imposed. ACS counsel confirmed that she had not served or filed conformed pleadings, and the court then stated that its findings would be "based only on the original allegations [that are] contained in the petition."
On the August 4, 2022 hearing date, the mother testified that over the last three years, the child had reported to her that the father used alcohol during the child's visits and that he was drunk and/or drinking on the day of the incident. These allegations were not contained in the petition.
The father testified at the fact-finding hearing. He denied having any verbal argument with the child and denied that the subject incident ever happened. He stated that there was no need for him to discipline the child because she was a "good girl" and that they would "talk things through." The father further testified that on a couple of occasions, he had taken away the child's cell phone, but he had never used physical discipline with any of his children. The father also denied throwing the child's laptop. He submitted photographs of the laptop, which he took on the date of his testimony, and the photographs were admitted into evidence. The father testified that he did not drink any alcohol on June 7, 2021, or at any time during his parental access with the child from June 7, 2021 to June 9, 2021. He further testified that he did not typically keep alcohol in his home and that he did not drink any alcoholic beverages while caring for the child. He testified that he drank alcohol occasionally during social gatherings, such as parties or holidays.
On May 5, 2023, following the close of the fact-finding hearing, the Family Court issued an order of fact-finding, upon a decision of the same court, also dated May 5, 2023. The court found that the father neglected the child. In its decision, the court stated that:
"[T]he totality of the evidence establishes that the [father] neglected the child by causing her emotional harm and physical harm and putting her at risk of further physical harm by his misuse of alcohol [and] that although there are some discrepancies amongst the [*3]witnesses['] testimony, there is sufficient consistency concerning the father's aggressive approach towards the child, and his misuse of alcohol in her presence to support a finding of neglect.
. . .
"[T]he Court finds that the totality of the evidence establishes by a preponderance of the evidence that the [father] has caused the child emotional harm by his aggressive behaviors and outbursts towards her, and his misuse of alcohol, which makes her anxious and nervous. It is this in combination with the bruise, not the bruise itself, which establishes by a preponderance of the evidence that the [father] neglected the child" (emphasis added).
On June 23, 2023, the Family Court held a dispositional hearing and, on June 27, 2023, the court issued an order of disposition. The order of disposition, upon the order of fact-finding, inter alia, released the child to the custody of the nonrespondent mother under the petitioner's supervision. The father appeals.
II. Legal Analysis
Family Court Act § 1012(f)(i)(B) provides, in relevant part, that:
"'Neglected child'" means a child that is less than eighteen years of age . . . whose physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as a result of the failure of his [or her] parent . . . to exercise a minimum degree of care . . . in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or a substantial risk thereof, including the infliction of excessive corporal punishment . . . or by misusing alcoholic beverages to the extent that he [or she] loses self-control of his [or her] actions . . . ."
In a child protective proceeding pursuant to Family Court Act article 10, the petitioner has the burden of proving neglect by a preponderance of the evidence (see id. § 1046[b][i]; Matter of Nyla S. [Jason B.], 224 AD3d 691, 692; Matter of Myiasha K.D. [Marcus R.], 193 AD3d 850, 851-852). Only competent, material, and relevant evidence may be admitted into evidence at a fact-finding hearing (see Family Ct Act § 1046[b][iii]).
We recognize that the Family Courts are tasked with making difficult decisions every day in child protective proceedings pursuant to Family Court Act article 10, the purpose of which is "to establish procedures to help protect children from injury or mistreatment and to help safeguard their physical, mental, and emotional well-being" (id. § 1011). Family Court Act article 10 "is designed to provide a due process of law for determining when the state, through its family court, may intervene against the wishes of a parent on behalf of a child so that his [or her] needs are properly met" (id.). The Court of Appeals has noted, however, that "[t]he drafters of article 10 were deeply concerned that an imprecise definition of child neglect might result in unwarranted state intervention into private family life" (Nicholson v Scoppetta, 3 NY3d 357, 368 [internal quotation marks omitted]). Under the circumstances presented here, we agree with the father that the Family Court erroneously found that ACS established by a preponderance of the evidence that the father neglected the child by inflicting excessive corporate punishment.
As we have often stated, "[a]lthough parents have a right to use reasonable physical force against a child in order to maintain discipline or to promote the child's welfare, the use of excessive corporal punishment constitutes neglect" (Matter of Alexander S. [Gabriel H.], 224 AD3d 907, 910 [internal quotation marks omitted]; see Matter of Tarahji N. [Bryan N.—Divequa C.], 197 AD3d 1317, 1320).
Parenting and discipline methods have changed significantly in recent years, and the use of any physical force against children has been frowned upon in society as an acceptable means of discipline. It is less acceptable today to see parents discipline their child physically through corporal punishment by means such as grabbing, spanking, or smacking in public or even at home. Until recently, corporal punishment was an acceptable use of discipline in some schools in New [*4]York. As of October 2023, the use of corporal punishment has been prohibited in all schools in New York (see Education Law §§ 305[60], as added by L 2023, c 551, § 2; id. § 1125[1], as added by L 2023, c 551, § 1). Under today's societal norms, parents are encouraged to speak to their children and use other methods of discipline without any form of aggression whatsoever. However, that is not to say that the methods of discipline through reasonable physical force as corporal punishment are not permitted. As such, we must be guided by our jurisprudence. There are some facts that so obviously support a finding of excessive physical force, but others require some reflection as to whether the act itself in the context of parenting was reasonable, or at least not excessive, so as to support a finding of neglect.
This Court has held that a single incident of excessive corporal punishment can constitute neglect (see Matter of Lea E.P. [Jason J.P.], 176 AD3d 715, 716; Matter of Elisa V. [Hung V.], 159 AD3d 827, 828). However, we find that the facts of the present case do not rise to a level supporting a finding of neglect under Family Court Act article 10. A review and comparison of prior holdings must serve as a guide to the courts in making the proper determination in each case before them. For example, in Matter of Eliora B. (Kennedy B.) (146 AD3d 772), the evidence at the fact-finding hearing established that the father became enraged and locked the mother out of the house when she left for the evening without cooking dinner for the subject children. The father blocked the door and instructed the children not to allow the mother back in the house. When the father discovered that one of the children had helped the mother reenter the house, he struck the child with a chair, bruising the arm that the child had raised to protect herself. When the child tried to stand, the father grabbed her by the throat and threw her down. The facts in that case supported the Family Court's conclusion that the father neglected the child by inflicting excessive corporal punishment (id. at 774).
In Matter of Elisa V. (Hung V.) (159 AD3d at 828-829), this Court affirmed the Family Court's determination that there was ample evidence, which included the father's own admissions to a police detective, for a finding of neglect based on the infliction of excessive corporal punishment. The father had beat his 15- and 17-year old daughters with a softball bat because the 15-year old daughter had refused to give him access to her cell phone and laptop after the daughters' mother had found flyers about sexually-transmitted disease testing in their bedroom (id. at 827-828).
We have often affirmed the Family Court's finding of neglect based on a single incident of excessive corporal punishment (see Matter of Nathaniel I.G. [Marilyn A.P.], 227 AD3d 806, 807 [the mother pushed the child and restricted his breathing, leaving scratches on the child's eyelid and shoulder, which were visible to the ACS caseworker]; Matter of Thaddeus R. [Gabrielle V.], 198 AD3d 901, 902 [the mother punched, hit, and scratched the child, leaving a red mark on the child's knee, which was visible to a caseworker three days after the incident]; Matter of Tarahji N. [Bryan N.—Divequa C.], 197 AD3d at 1320 [the mother struck the child with her hands multiple times and bit the child's finger, leaving marks and injuries observed by caseworkers and necessitating medical treatment]; Matter of Alivia F. [John F.], 194 AD3d 709, 712 [the father choked the child and pushed him into a dresser]; Matter of Nah-Ki B. [Nakia B.], 143 AD3d 703, 706 [the father choked the child, and the child's out-of-court statements that the father had choked her were corroborated, inter alia, by medical records]; Matter of Dalia G. [Frank B.], 128 AD3d 821, 823 [the father choked both children and slammed one of them to the floor]).
This Court has also held that a single incident of excessive corporal punishment was not sufficient to sustain a finding of neglect under Family Court Act article 10, under the particular circumstances of a given case, even where the use of physical force was inappropriate (see Matter of Myiasha K.D. [Marcus R.], 193 AD3d at 851; Matter of Anastasia L.-D. [Ronald D.], 113 AD3d 685, 686-687). Thus, even where the use of physical force could be deemed inappropriate under the circumstances, it nevertheless might not be sufficient to support a finding of neglect under Family Court Act article 10 (see Matter of Myiasha K.D. [Marcus R.], 193 AD3d at 851-852).
In Matter of Myiasha K.D. (Marcus R.) (193 AD3d at 851-852), ACS filed petitions alleging neglect by the paternal uncle as a person legally responsible for the care of the subject children, Myiasha K.D. and Amiya J.D., based on Myiasha's claim, inter alia, that after she made fun of another adult in the household, the paternal uncle struck her on the arm, leaving a bruise. At a fact-finding hearing, Myiasha's school guidance counselor testified that Myiasha told him that her paternal uncle had struck her on the arm, and the notes of the investigating ACS caseworker indicated that Myiasha provided her with a similar statement. The caseworker also observed some bruising on Myiasha's upper arm. The paternal uncle and the paternal grandmother denied that [*5]Myiasha was ever hit by the paternal uncle. No other marks or bruises were observed on Myiasha, and there was no evidence presented that the other child, Amiya, was ever struck by the paternal uncle. At the conclusion of the fact-finding hearing, the Family Court determined that the paternal uncle neglected Myiasha and derivatively neglected Amiya.
We reversed, holding that, under the circumstances presented, "ACS failed to establish by a preponderance of the evidence that the paternal uncle's action in inappropriately striking the child rose to the level of neglect, or that he intended to hurt Myiasha, or exhibited a pattern of excessive corporal punishment" (id. at 852). Similarly, in this case, the evidence presented failed to establish by a preponderance of the evidence that the father's inappropriate grabbing or holding of the child's arm or shoulder rose to the level of neglect, or that he intended to hurt the child or that he exhibited a pattern of excessive corporal punishment.
In Matter of Anastasia L.-D. (Ronald D.) (113 AD3d at 686-687), we affirmed the Family Court's dismissal, after a fact-finding hearing, of the petitions filed by ACS against the father alleging that he had neglected the subject children, Anastasia and Amethyst, through the infliction of excessive corporal punishment upon Anastasia and his own use of marijuana. The father allegedly hit 14-year-old Anastasia with a belt several times when she refused to give him her cell phone upon his request, causing bruises to her body. Also, the children had allegedly observed the father smoking marijuana on prior occasions. The father testified at a fact-finding hearing that he was attempting to discipline Anastasia for cutting school by taking away her cell phone, and that he hit her with the belt when she refused to give him the phone and charged at him. He testified that corporal punishment was not his normal mode of discipline. He also testified that he had smoked marijuana, but did not smoke it regularly, and that he never used or was under the influence of marijuana in the children's presence. After the fact-finding hearing, the Family Court dismissed the petitions (id. at 687). In affirming, we held that, under the circumstances presented, "the Family Court correctly found that ACS failed to establish by a preponderance of the evidence that the father neglected Anastasia by virtue of his infliction of excessive corporal punishment upon her. ACS failed to establish that the father intended to hurt Anastasia, or that his conduct demonstrated a pattern of excessive corporal punishment" (id.; see Matter of Tarahji N. [Bryan N.—Divequa C.], 197 AD3d at 1319-1320 [the Family Court's finding of neglect based on excessive corporal punishment was reversed where ACS had offered evidence of a single instance in which the mother hit the child's arm with a belt to discipline him after he was caught shoplifting]; Matter of Laequise P. [Brian C.], 119 AD3d 801, 802 [the Family Court's finding of neglect based on excessive corporal punishment was reversed, and we held that "[t]he father's open-handed spanking of the child as a form of discipline after he heard the child curse at an adult was a reasonable use of force, and, under circumstances presented . . . , did not constitute excessive corporal punishment"]). Under the circumstances presented here, we agree with the father that the Family Court erroneously found that ACS established by a preponderance of the evidence that the father neglected the child by inflicting excessive corporate punishment. ACS failed to establish that the father's act of grabbing or holding the child's arm or shoulder rose to the level of neglect or that he intended to hurt the child or exhibited a pattern of excessive corporal punishment (see Matter of Myiasha K.D. [Marcus R.], 193 AD3d at 851-852; Matter of Anastasia L.-D. [Ronald D.], 113 AD3d at 687; Matter of Alexander J.S. [David S.], 72 AD3d 829, 830). In so holding, we are not deviating from our prior decisional law so as to suggest that a single incident of excessive corporal punishment cannot support a finding of neglect under Family Court Act article 10. We emphasize that each case is fact specific, and we hold that under the particular circumstances in the present case, the single incident of the father grabbing the child's arm or shoulder did not rise to the level of neglect under Family Court Act article 10.
Next, we find merit to the father's contention that the Family Court improperly based its finding of neglect, at least, in part, upon allegations that were not included in the petition, to wit, that the father had previously engaged in unspecified acts of aggression toward the child and that he misused alcohol in the child's presence. The petition does not contain any allegations of misuse of alcohol or of acts of aggression toward the child other than the incident that occurred on or about June 7, 2021. Specifically, it is alleged in the petition that on or about June 7, 2021, the father grabbed the child's arm and squeezed her "really, really hard," and that on or about June 10, 2021, the ACS caseworker observed "three circular, dark green marks" on the child's shoulder, which "appeared to be the size of fingerprints."
Family Court Act § 1051(b) provides that "[i]f the proof does not conform to the [*6]specific allegations of the petition, the court may amend the allegations to conform to the proof; provided, however, that in such case the respondent shall be given reasonable time to prepare to answer the amended allegations." We have held that it is improper for the Family Court to rely upon evidence relating to claims not alleged in the petition (see Matter of Amier H. [Shellyann C.H.], 106 AD3d 1086, 1087; Matter of Crystal S. [Elaine S.], 74 AD3d 823, 825). Here, it is clear from the court's decision that the court improperly relied on evidence relating to the father's alleged "misuse of alcohol" and alleged "aggressive behaviors and outbursts towards the child," which were not alleged in the petition (see Matter of Amier H. [Shellyann C.H.], 106 AD3d at 1087; Matter of Crystal S. [Elaine S.], 74 AD3d 823 at 825). Indeed, the court had afforded ACS an opportunity to conform the pleadings to the proof by a certain date, and after ACS failed to do so, the court made a ruling on the record that its findings would "be based only on the original allegations contained in the petition." Ultimately, the court failed to adhere to its own ruling.
Furthermore, the only evidence relating to the father's alleged misuse of alcohol were the child's statements to the mother and the ACS caseworker. A child's prior out-of-court statements relating to abuse or neglect are admissible in evidence, but if uncorroborated, such statements are not sufficient to support a finding of neglect (see Family Ct Act § 1046 [a][vi]; Matter of Kashai E. [Kashif R.E.], 218 AD3d 574, 575; Matter of Treyvone A. [Manuel R.], 188 AD3d 1182, 1183). Mere "repetition of an accusation by a child does not corroborate the child's prior account of it" (Matter of Nicole V., 71 NY2d 112, 124). Here, there was no corroborating evidence regarding the father's alleged misuse of alcohol. In fact, the ACS caseworker testified that during her visits to the father's home prior to the date of the incident, she had never observed any alcohol in the home or the father under the influence of alcohol, and that the child reported that she did not observe any alcohol in the home and that she did not actually see the father drinking alcohol.
Accordingly, the order of disposition dated June 27, 2023, is reversed, on the law and the facts, the order of fact-finding dated May 5, 2023, is vacated, the petition is denied, and the proceeding is dismissed.
CONNOLLY, J.P., MILLER and WARHIT, JJ., concur.
ORDERED that the order of disposition dated June 27, 2023, is reversed, on the law and the facts, without costs or disbursements, the order of fact-finding dated May 5, 2023, is vacated, the petition is denied, and the proceeding is dismissed.
ENTER:
Darrell M. Joseph
Clerk of the Court